2007 VT 137

# In re Green Crow Corporation

[944 A.2d 244]

No. 06-411

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed December 14, 2007

*David L. Grayck* of *Cheney, Brock & Saudek, P.C.*, Montpelier, for Appellant.

¶ 1. **Reiber, C.J.** This appeal arises after our reversal and remand in *In re Green Crow Corp.*, 2006 VT 14, 179 Vt. 616, 895 A.2d 189 (mem.) (*Green Crow I*). For the reasons set out below, we again reverse and remand.

¶ 2. Green Crow's permit-application odyssey began in October 2003, when it applied to the District #3 Environmental Commission for an Act 250 permit to log land above 2,500 feet in Granville. *Green Crow I*, ¶ 2. The commission issued a permit authorizing Green Crow to log 184 acres above 2,500 feet, but the permit also imposed conditions on approximately 1,000 additional acres below 2,500 feet. The commission explicitly found that it had jurisdiction to impose permit conditions on "all access roads, skid trails, accesses and log landings related to the logging above 2,500

feet, even if the roads, trails, and landings are below 2,500 feet." Green Crow appealed to the Environmental Board in March 2004.[1]

¶ 3. The Board determined, in that appeal, that it lacked jurisdiction to determine whether Act 250 applies to logging activity on lands below 2,500 feet. *Id.* ¶ 4. Green Crow appealed. In *Green Crow I*, we reversed and remanded for the Board to determine whether it had jurisdiction over plaintiff's logging-related activities on the lower-elevation land. *Id.* ¶¶ 7-8. On remand, the Board — in two separate orders — concluded that it did have jurisdiction over those activities, and that it could therefore impose reasonable permit conditions on the land and activities below 2,500 feet.

¶ 4. In the first order, issued in June 2006, the Board denied Green Crow's motion for summary decision, which sought a ruling that permit conditions for the development could not apply to the lands below 2,500 feet.[2] Green Crow moved, in July 2006, for reconsideration of the denial, and the Agency of Natural Resources filed a brief in support of Green Crow's motion. The Board, in an August 2006 memorandum, denied the motion and elaborated on its earlier ruling. Although the Board's June order was unanimous, the August order included a dissent by four of the nine Board members.

¶ 5. The Board concluded in the June decision that "[o]nce Act 250 jurisdiction is triggered as it has been here, it attaches to the entire tract or tracts of involved land." This conclusion was premised on the Board's distinction between "original Act 250 jurisdiction" and the application of permit conditions to "land and activities below 2,500' in elevation, when jurisdiction has been triggered by development above 2,500'." The former, the Board concluded, was established by the fact that some logging would occur on land above 2,500 feet. That jurisdiction, according to the June decision, gave the Board authority to impose permit conditions on all "involved land" that is part of the project tract. Those permit conditions, the Board noted, must be reasonable and "within the limits of its police power to ensure that [the project

---

[1] See 2003, No. 115 (Adj. Sess.), § 121(b)(2)(A) (authorizing Environmental Board to continue to exist for limited purpose of completing consideration of matters received before January 31, 2005).

[2] The motion for summary decision did not seek resolution of the other six issues on appeal, which concerned the project's compliance with Act 250 criteria 1, 1(A), 1(E), 4, 8(A), and 9(K). See 10 V.S.A. § 6086(a).

complies] with the statutory criteria." The Board further noted that "[r]oads and other infrastructure built to serve the development, for instance, clearly constitute part of that development, even though they may be at lower elevations." The Board went on to overrule its 1984 decision in *In re Vermont Department of Forests, Parks & Recreation*, No. 1R0488-EB (Jan. 11, 1984), in which the Board held that it could regulate only that portion of a logging site that was above 2,500 feet. The Board explained its decision to overrule the 1984 decision thus:

> This case is not about regulating logging at elevations below 2,500'. The Board acknowledges the exemption from jurisdiction for logging below 2,500', but it does not apply here. Instead, this case addresses the simple question of whether appropriate permit conditions can be imposed on involved land below 2,500' to address the impacts of the Project. The fact that otherwise exempt activities may be occurring at those elevations is irrelevant, and serves only to confuse the analysis. The purpose of any reasonable permit condition would not be to regulate logging below 2,500', but to address impacts of the development.

¶ 6. Following the June decision, Green Crow filed a motion to alter, contending that the Board's reliance on the concept of "involved land" in the context of a logging permit was improper. Green Crow further argued that the Board's declaration that it had jurisdiction over logging-related activities below 2,500 feet would deter high-altitude logging, which almost always requires construction of improvements below 2,500 feet for access to the higher-altitude land. Green Crow requested that the Board follow its decision in *Vermont Department* and rule that permit conditions could not be applied to the land below 2,500 feet.

¶ 7. The Board denied the motion to alter in August 2006, and issued a new decision. The Board disavowed any reliance on the concept of "involved land" and stated that "[i]t is not the concept of involved land that is crucial here; rather, it is the fact that components and impacts of the development (logging above 2,500') necessarily extend to parts of the Project tract below 2,500'." The Board again drew a distinction between jurisdictional triggers — in this case, logging above 2,500 feet — and the authority to attach permit conditions once jurisdiction over a project is estab-

lished. The Board noted that "[t]he purpose of permit conditions is to address a project's impacts under the criteria. The various jurisdictional thresholds, on the other hand, reflect the Legislature's determination of what types of projects should be subject to Act 250 review in the first instance."

¶ 8. In this appeal, Green Crow asserts essentially two grounds for reversal. First, it contends that the Board's use of the concept of "involved land" was erroneous. Second, Green Crow avers that the Board erred in overruling *Vermont Department*, which Green Crow contends remains a viable precedent. We agree with Green Crow on both points.

¶ 9. As to the first, the Board itself abandoned its earlier reliance on the notion of "involved lands" in its August decision. Therefore, although Green Crow continues to press the point, we do not read the Board's decision as necessarily relying on an "involved lands" analysis. Accordingly, we move on to Green Crow's second point.

¶ 10. We begin with the language of Act 250. The Act, by its terms, prohibits "development" without a permit. 10 V.S.A. § 6081(a). Construction of improvements for industrial or commercial activity, including logging, above 2,500 feet is "development." *Id.* § 6001(3)(A)(vi). However, "[t]he construction of improvements for . . . logging . . . purposes below the elevation of 2,500 feet" is explicitly excluded from the term "development." *Id.* § 6001(3)(D)(i). Permit applications are required to contain a "plan of the proposed development," *id.* § 6083(a)(2), and "[b]efore granting a permit, the district commission shall find that the . . . development" meets several enumerated criteria. *Id.* § 6086(a). The criteria, the precise details of which are not pertinent here, are codified at § 6086(a)(1)-(10), and generally require consideration of a development's impact on the environment, traffic, and local government, and of its conformance with local and regional development plans. "A permit may contain such requirements and conditions as are allowable proper exercise of the police power and which are appropriate with[] respect to [the statutory criteria]." *Id.* § 6086(c).

¶ 11. Act 250 does not expressly confer authority on the Board or the district commissions to impose permit conditions on logging-related activities below 2,500 feet, whether or not those activities are related to logging above that elevation. Under the

facts here, the "development" is the logging above 2,500 feet. *Id.* § 6001(3)(A)(vi). Therefore, the development — that is, the high-altitude logging — must meet the enumerated statutory criteria in order to be permitted. *Id.* § 6086(a). The question, as the Board majority noted in the August decision, is whether the statutory criteria in § 6086 vest authority in the Board and the district commissions to impose permit conditions on logging-related activities below 2,500 feet when jurisdiction has been triggered in the first instance by logging above that elevation.[3]

■ ■ ¶ 12. In interpreting Act 250, we are mindful of our limited role in reviewing an agency's interpretation of a statute it is charged with administering. We give "great deference to the Board's interpretation of Act 250, even in appeals raising jurisdictional issues." *In re Taft Corners Assocs.*, 160 Vt. 583, 590, 632 A.2d 649, 653 (1993). Absent a compelling indication of error, we will sustain the Board's interpretation of its enabling legislation and the rules it has adopted to carry out its statutory mandate. *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992). We will not, however, sustain a decision in which an administrative body like the Board purports to enlarge its own powers beyond those granted by the Legislature. Cf. *In re Agency of Admin.*, 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982) ("An administrative agency may not use its rule-making authority to enlarge a restrictive grant of jurisdiction from the legislature."). "[A]lthough the purposes of Act 250 are broad, the Legislature in passing the Act did not purport to reach all land use changes within the state, nor to impose the substantial administrative and financial burdens of the Act . . . except where values of state concern are implicated . . . ." *Id.* (citing *Comm. to Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc.*, 137 Vt. 142, 151, 400 A.2d 1015, 1020 (1979)).

■ ¶ 13. We recognize, of course, that the line between jurisdictional and nonjurisdictional questions may not always be clear. See, e.g., C. Sunstein, *Law and Administration After Chevron*, 90

---

[3] The Board's June and August decisions suggest that the access roads and landings below 2,500 feet are either "part of the development" or "components . . . of the development." The rest of the Board's decisions, however, suggest that this language was not used advisedly, and the decisions as a whole are premised on the notion that the low-elevation activities are subject to jurisdiction only because those activities have impacts related to the higher-elevation logging, not because the lower-elevation activities are strictly speaking a part or component of the "development."

Colum. L. Rev. 2071, 2099 (1990) (noting the "sometimes elusive distinction between jurisdictional and nonjurisdictional questions"). The Board's ruling here was jurisdictional in the sense that it delineated the Board's power to regulate a certain type of activity, but nonjurisdictional in that it did not expand the *class* of cases the Board could rule on in the first instance. The level of deference we afford to agency determinations that are arguably jurisdictional depends on the character of the decision; fact-intensive determinations that rely on agency expertise will generally be given more deference than purely legal determinations. We have previously noted that the Board's determination of what constitutes a "road" is "inherently fact-bound" and that therefore "a reasonable measure of discretion" inheres in that arguably jurisdictional determination. *Sec'y v. Short*, 165 Vt. 277, 281, 682 A.2d 484, 486 (1996). The determination of whether permit conditions may attach to Green Crow's low-altitude activities is far less fact-bound, and thus entitled to less deference, than the "road" determination in *Short*.

¶ 14. The Board cited several prior decisions in which it held that otherwise-exempt activities may "trigger jurisdiction if they are part of a plan to develop." See, e.g., *In re McLean Enters., Inc.*, Declaratory Ruling No. 428, slip op. at 6 n.2 (July 22, 2005); *In re Luce Hill P'ship*, No. 5L1055-EB, slip op. at 8 (July 7, 1992) (logging below 2,500 feet to clear land for subdivision requires Act 250 review). We do not find those cases pertinent; they dealt with the question of when the cutting of trees below 2,500 feet for other low-altitude development or subdivision purposes could trigger Act 250 jurisdiction in the first instance. Here, the question is whether permit conditions for high-altitude logging can apply to related activities below 2,500 feet.

¶ 15. The one case cited by Green Crow and the Board in which the Board squarely faced this question is *In re Vermont Department of Forests, Parks & Recreation*, No. 1R0488-EB (Jan. 11, 1984). In *Vermont Department*, the Department proposed "to construct 700' of temporary . . . access road and to conduct tree thinning operations on an approximately 10 acre tract . . . all of which lies above 2,500' in elevation." *Id.*, slip op. at 3. "The project site [was] a portion of a 68 acre thinning operation," some of which was below 2,500'. The Town of Shrewsbury, in which the land was located, "asked that, by way of permit conditions, [the Board] impose uniform restrictions on all cutting by the Depart-

ment adjacent to the [Shrewsbury Peak] trail, both above and below 2,500' in elevation." *Id.* at 8. The Board concluded, in light of the explicit statutory exclusion of sub-2,500-foot logging from the definition of "development," that it could not impose any permit conditions "relative to the Department's activities below 2,500 feet." *Id.*

¶ 16. In its two decisions in the instant case, the Board cited no decision since *Vermont Department* in which it had reached the contrary conclusion, but noted also that *Vermont Department* has not been cited or further analyzed by the Board since it issued more than twenty years ago. The Board declined to follow the bright-line rule announced in *Vermont Department* on that basis, and because "the decision did not discuss the elevation issue in detail and did not provide any further analysis." We agree with the dissenting Board members, however, that *Vermont Department*'s analysis of the elevation issue was correct, if brief. Where the "development" for which a permit is sought consists entirely of logging and related activities, as is the case here, we do not believe the Legislature intended to subject the low-elevation activities to Act 250 scrutiny simply because they are also related to the high-elevation logging. The skid-track and road-building activities below 2,500 feet, even if associated with logging above that elevation, are functionally no different from the same activities affiliated only with low-elevation logging, which Act 250 plainly confers no power to regulate.

¶ 17. Finally, the Board's construction of Act 250 would lead to a conflict between the definition of "development" in § 6001(3)(D)(i) and Act 250 Rule 34, which requires permit amendments when a "development or subdivision" undergoes a "material change." Act 250 Rules, 12 Code of Vt. Rules 12 004 060-28. According to the August decision, a permit amendment would be required under Rule 34 only "[i]f Green Crow changes the permitted high-elevation logging project . . . in a way that could have significant environmental impact." Thus, it appears that the lower-elevation access roads and landings — which are not, strictly speaking, "development" — would be subject to permit conditions initially, but modifications to those improvements would not constitute a "material change" and would therefore not require Green Crow to apply for a permit amendment. This is the sort of conflict that we strive to avoid when construing statutes

and administrative rules on the same subject matter. Cf. *Kankakeeland Cmty. Action Program, Inc. v. Ill. Dep't of Commerce & Cmty. Affairs*, 557 N.E.2d 277, 281 (Ill. App. Ct. 1990) ("When courts interpret [administrative] rules in conjunction with a statute, they should construe the rules together with the statute to make, if possible, an effective piece of legislation in harmony with common sense and sound reason . . . .") (citation and quotation omitted).

¶ 18. We do not hold that Act 250 review of high-altitude logging may never include consideration of the impacts of that logging on land below 2,500 feet. Certainly conditions may be imposed on the land *above* 2,500 feet based on concerns about impacts on land below that elevation. Conditions may not, however, be imposed on land *below* 2,500 feet simply because that land is used to further the purposes of the high-altitude development over which Act 250 has jurisdiction. Furthermore, we take care to note that we do not hold that Act 250 may never impose permit conditions limiting the cutting of trees below 2,500 feet. For example, Act 250 may certainly impose permit conditions limiting tree-cutting activities associated with a subdivision or other low-altitude development. See, e.g., *McLean Enters.*, Declaratory Ruling No. 428, slip op. at 6 n.2 (July 22, 2005); *In re Capital Heights Assocs.*, Declaratory Ruling No. 167, slip op. at 3 (Mar. 27, 1985) ("[T]he cutting of trees and construction of logging roads may constitute 'commencement of construction' of a development, rather than . . . logging."). The Legislature's intent was to allow bona fide logging projects below 2,500 feet to proceed without the "substantial administrative and financial burdens" of complying with the Act.

¶ 19. Accordingly, we reverse the Board's denial of Green Crow's motion for summary decision, and hold that no permit conditions may be imposed on the activities below 2,500 feet that are the subject of this appeal. A remand, however, remains necessary. On remand, the Board must resolve the remaining six issues concerning the permit criteria, see *supra*, n.2, and may modify permit conditions applicable to land above 2,500 feet if such modification is necessary in light of our holding today.

*Reversed and remanded for further proceedings consistent with this opinion.*