2008 VT 59

## In re Appeal of LiCausi
## (Crushed Rock, Inc., Appellant)

[955 A.2d 1177]

No. 06-312

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Katz, Supr. J.,
Specially Assigned**

Opinion Filed May 2, 2008

*Edward V. Schwiebert* and *David R. Cooper* of *Kenlan, Schwiebert & Facey, P.C.*, Rutland, for Appellant.

*Gale M. LiCausi*, Pro Se, Clarendon, Appellee.

*William H. Sorrell*, Attorney General, and *Kevin Leske*, Assistant Attorney General, Montpelier, for Amicus Curiae State of Vermont.

¶ 1. **Burgess, J.** Appellant Crushed Rock, Inc. appeals the decision of the Environmental Court adding a condition to an

air-pollution permit for the operation of an asphalt plant. Appellee LiCausi, a neighboring resident of Clarendon, cross-appeals from approval of the permit. The court upheld the determination by the Agency of Natural Resources (ANR) to award the permit, but appended a new condition mandating that Crushed Rock collect on-site meteorological data for six months. Because we have been shown neither statutory authority nor findings authorizing such a condition, we strike the condition while affirming the issuance of the permit itself.

¶ 2. The facts are undisputed. In 2003, Crushed Rock applied to renew a permit from the Air Pollution Control Division of ANR authorizing the construction and operation of an asphalt "hot-mix batch" plant in Clarendon. Crushed Rock's predecessor company was granted a permit to begin a similar operation on the site in 1998. State law mandates that asphalt plants, among other stationary sources of air pollution, acquire a permit from the Secretary of ANR before they may commence operations. 10 V.S.A. § 556(a) ("No person shall construct or install any air contaminant source . . . without . . . obtaining a permit from [ANR] pursuant to this section."); Air Pollution Control § 5-401(2), 7 Code of Vermont Rules 12 031 001-39 (APCR).

¶ 3. Upon review of Crushed Rock's application, ANR found that the data used were "valid," and demonstrated that there would be "no violations of ambient air quality standards resulting from this project." Accordingly, on May 11, 2004, ANR issued the requested permit. Pursuant to 10 V.S.A. § 562(d),[1] several neighbors appealed this determination to the Environmental Court, complaining, among other things, that: (1) the 2004 permit application contained outdated data that did not accurately represent the equipment to be used on site; (2) ANR failed to include the impact of a nearby asphalt plant in its analysis; and (3) the data used in the permit's modeling were not representative of the Clarendon Valley, where the plant was to be operated. Not persuaded by neighbors' arguments, the court found that the data presented by Crushed Rock were "consistent with [ANR] guidelines," and that Crushed Rock's meteorological "modeling was conducted following the required guidelines and showed that the operation of the facility

---

[1] Section 562 has since been amended. Subsection (d), among others, was deleted, and appeals are now governed by 10 V.S.A. §§ 8501-8505. 2003, No. 115 (Adj. Sess.), § 14, eff. Jan 31, 2005.

will not result in the violation of any air standard." Nevertheless, and without any rationale except a generalized concern about the representational quality of the data and the "possibility" that actual weather in plant area might differ from the weather reflected in the modeling, the court added the following condition:

> [Crushed Rock] shall collect the local surface meteorological data . . . during the first May 1 through November 1 period of operation, to be used to determine whether the [data used in the permit application] is "representative" for this valley or whether any conditions should be adjusted to conform to the local conditions.

¶ 4. Crushed Rock's post-trial motion to remove the condition was denied, and this appeal followed. On appeal, Crushed Rock contests the imposition of the on-site data-collection condition. In her cross-appeal, the remaining neighbor challenges the condition as inadequate, and argues that it was error to approve the permit for three reasons: (1) Crushed Rock's application was inaccurate because it relied on outdated meteorological data and topographical maps; (2) the application failed to include an older asphalt plant's impact on air pollution in the region; and (3) the information contained in the application was the same as that submitted for the 1998 permit, and was thus out of date.

## I.

¶ 5. We first address the condition added to the permit by the Environmental Court. Crushed Rock argues that the court erred by failing to defer to ANR's determination that the meteorological data used were sufficient for purposes of the permit application. Neighbor counters that the court erred when it required only six months of monitoring. She claims that ANR regulations require that one year of data be collected on site. "Our review of the Environmental Court's decision is deferential." *In re Shaw*, 2008 VT 29, ¶ 7, 183 Vt. 587, 945 A.2d 919 (mem.).

¶ 6. Vermont's air-quality-permitting scheme is governed by 10 V.S.A. §§ 551-579, which delegate to the Secretary of ANR authority to grant permits to control air-pollution sources. *Id.* §§ 556, 556a(a). Permit applications must contain "such plans, specifications and other information as the secretary deems necessary" to evaluate the request. *Id.* § 556(a). ANR promulgated the Vermont Air Pollution Control Regulations (APCRs) to implement the

permitting provisions of Title 10. Section 5-502 of these regulations requires that an applicant's Ambient Air Quality Impact Evaluation (evaluation) be "prepared in accordance with procedures acceptable to the Secretary." APCR § 5-502(4)(e). Acceptable procedures are set forth in the Air Quality Impact Evaluation Guidelines (Guidelines).

¶ 7. At issue here is Crushed Rock's proffer of meteorological data in support of its application. Section 7.2 of the Guidelines requires that an applicant's model use:

> actual meteorological data from a representative weather station or on[-]site data collection. The . . . data should contain the five (5) most recent, consecutive years of hourly surface meteorological data combined with five (5) years of concurrent mixing height upper air observations . . . . In Vermont, upper air sounding from Albany, NY may be used with Burlington, VT meteorological data for most of the state.

With its permit application, Crushed Rock submitted an evaluation containing computer modeling based on meteorological data taken from official weather stations in Burlington (for surface data) and Albany, NY (for upper air).

¶ 8. In its decision, the Environmental Court found that the use of data from the Burlington and Albany weather stations was "consistent with the [G]uidelines," and actually produced "conservative modeling assumptions" of the temperature inversions in the valley.[2] The court further found that the modeling conducted using this data "follow[ed] the required [G]uidelines and showed that the operation of the facility will not result in the violation of any air standard." Thus, the court concluded:

> if the project is constructed and operated as proposed . . . it will not cause or contribute to violation of any National Ambient Air Quality Standard, will comply with the Secondary Ambient Air Pollution Standards . . .

---

[2] One of neighbor's major concerns was whether the Burlington and Albany data would sufficiently represent temperature inversions, a weather pattern that can affect the amount of pollution that concentrates in an area. The Clarendon Valley has different topographic features than the flatter plains at the Burlington Airport and in Albany, but ANR found that data from the latter were sufficiently "representative" for purposes of the application.

and will not cause a significant deterioration of the air quality in the vicinity.

■ ¶ 9. Despite these findings and conclusions in support of the permit, the court ordered Crushed Rock to collect an additional six months of surface meteorological data at the plant site. This condition is unsupported by any findings of the court. While the Environmental Court opined that on-site data *"may be* necessary to determine whether the [data used by Crushed Rock] is 'representative,'" and that it would *"consider* requiring [Crushed Rock] to collect the local equivalent . . . data" due to the *"possibility* that the localized weather behaves differently from that used for the modeling," these abstract concerns never evolved past the point of speculation. (Emphasis added.) There were no findings to the effect that the data were not representative, that local weather was substantially different from the Burlington or Albany sampling, or that ANR acted unreasonably in relying on its Guidelines. The musings of the Environmental Court were ultimately resolved by its finding that the data submitted were consistent with the Guidelines requiring that the data be representative, and that the modeling both complied with the Guidelines and demonstrated that no air-quality standard would be violated by plant operations. Because nothing in the court's findings and conclusions supports the requirement of ongoing local weather monitoring, that condition must be struck from the permit.[3]

## II.

¶ 10. We next address neighbor's claims that the 2004 permit application contained outdated, and therefore inaccurate, information. Neighbor argues that Crushed Rock presented expired meteorological data and topographical maps, failed to assess the pollution impact from an existing asphalt plant located within the region, and merely resubmitted materials from its original 1998 permit which, by the time of its 2004 application for renewal, was out of date.

---

[3] Neighbor's argument that the condition should be revised upward, requiring Crushed Rock to collect one year of on-site data instead of six months, is equally unsupported by the court's findings, and thus must be rejected. We note that our conclusion keeps us from having to reach the issue of what level of deference the Environmental Court must accord ANR's interpretation of its regulations. Additionally, our decision to strike the condition is unaffected by the fact that an evaluation appears not to have been required at all in this case. See *infra,* ¶ 13.

¶ 11. As discussed in ¶ 6, *supra*, ANR has the authority to set air-pollution standards and to enforce those standards through a permitting system designed and controlled by the agency. See 10 V.S.A. §§ 554-556 (secretary of ANR has broad powers to "[a]dopt, amend and repeal rules," *id.* § 554(2); "[i]ssue orders as may be necessary to effectuate [the control of air pollution]," *id.* § 554(4); enforce these orders, *id.*; "[e]stablish ambient air quality standards for the state," *id.* § 554(11); "classify air contaminant sources," *id.* § 555(a); and require applicants for permits to submit all information the "secretary deems necessary in order to determine whether the proposed construction . . . will be in compliance," *id.* § 556(a)). Pursuant to this authority, the secretary has promulgated a number of regulations and Guidelines that applicants must follow when applying for a permit. Section 5-502 of these regulations requires applicants seeking to construct a "major stationary source" — a source whose allowable emissions of any air contaminant are equal to or greater than fifty tons per year — to submit an evaluation. APCR §§ 5-502, 5-101. For applicant sources that do not meet this fifty-ton threshold, ANR may, but need not, require the applicant to submit an evaluation. APCR § 5-406. Guideline 2.0 specifies further that an evaluation "*may* be required for . . . sources proposing allowable emissions of ten (10) tons per year . . . of [certain] air contaminants."

¶ 12. Further regulations guide the content of an applicant's evaluation. Guideline 7.2, which addresses the meteorological data used in an evaluation, requires that applicants use "the five (5) most recent, consecutive years of hourly surface meteorological data." Regulation § 5-101 addresses when an applicant must include the impact of existing sources when conducting its evaluation: a source "that exceeds the significance level of a pollutant [under § 5-101] may be required to include other near-by sources [in its evaluation]."

■ ¶ 13. Neighbor is correct that the meteorological data used in the 2004 permit application are "more than [sixteen] years old." Crushed Rock was not, however, required to submit an updated evaluation with its 2004 permit application. No emission from the proposed asphalt plant exceeds fifty tons per year, so § 5-502's mandate does not apply. Guideline 2.0 indicates that ANR may require an evaluation for emissions of greater than ten tons per year. Here, the only air contaminant for which emissions will increase beyond this threshold as a result of the 2004 permit is

carbon monoxide, but this increase will not cause the plant to exceed the regulatory significant level for this particular contaminant. Because "there [had] been no change in background criteria pollutants that would cause a violation of National Ambient Air Quality Standards," ANR did not require Crushed Rock to submit a revised evaluation. We accordingly reject neighbor's challenge to the age of the data used.[4]

■ ■ ¶ 14. With respect to topographic information, the Guidelines do not require that maps be of "a particular vintage"; whether a map appropriately represents the terrain in question is left to the discretion of ANR officials reviewing the application. Crushed Rock similarly followed ANR rules regarding when pollution from other local sources must be taken into account. ANR Regulation § 5-101 establishes "significance levels" for various pollutants, and proposed sources that exceed the § 5-101 "significance level" for any pollutant may be required to include the impact of nearby sources in their air quality evaluation. Here, because the projected emissions of the proposed asphalt plant "do not include any pollutant in excess of the respective significance level," Crushed Rock was not required by ANR regulations to include the impact of nearby sources in its evaluation. Because neighbor does not challenge the sufficiency of the Guidelines or regulations themselves, we need not reach the issue of whether these requirements properly comport with ANR's statutory mandate under Title 10.

■ ¶ 15. As for neighbor's contention that a substantial portion of the information contained in Crushed Rock's 2004 permit application mirrored that submitted with its 1998 application, and was thus outdated, testimony presented at trial demonstrated that much of the 1998 data were still accurate in 2004, and that the information that had changed in the interim had been properly updated. An environmental engineer employed by ANR explained that Crushed Rock's 2004 pollution modeling was based on updated emissions data "us[ing] the new equipment . . . new fuel limits, [and] production limits." Crushed Rock's expert further testified to the "emissions factors" and fuel and asphalt capacity limits that had changed between 1998 and 2004, and how these

---

[4] It is possible that the data used in the 1998 permit were outdated when the application for this permit was submitted, but neighbor is now barred from raising this claim due to res judicata.

changes had been incorporated into the 2004 application. While some of the information in the 2004 application was the same as that submitted in 1998, an ANR employee testified that "[w]e don't require someone to re-submit information if it's identical to what has already been submitted." Based on the information submitted, both old and new, the agency was able to "completely re-review[] as a new project" the 2004 permit application.

*The condition requiring six months of on-site monitoring is struck from the permit, which is in all other ways affirmed.*