STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Kevin L. Rogers, Inc. | } | Docket No. 88-5-09 Vtec |
| (Appeal of Rogers) | } | |
| | } | |

Decision and Order

Appellant Kevin L. Rogers, Inc. appealed from three conditions imposed by a decision of the District #3 Environmental Commission (District Commission), which granted Appellant's Act 250 application and issued Land Use Permit #3W1010. Appellant is represented by C. Daniel Hershenson, Esq., and Amy Clarise Ashworth, Esq. The Land Use Panel of the Natural Resources Board has not entered an appearance in this matter, but has informational status through John H. Hasen, Esq. No other party has entered an appearance.

Applicable Standard

As no other parties have entered an appearance in this appeal, Appellant has submitted its evidence and arguments in documentary form, in the nature of a motion for summary judgment. However, despite the lack of any opposing parties, the appeal "is not before the Court in the nature of a default judgment." In re: Free Heel, Inc., d/b/a Base Camp Outfitters, No. 217-9-06 Vtec, slip op. at 1, n.1 (Vt. Envtl. Ct. Mar. 21, 2007) (Wright, J.). Instead, the Court must "independently examine the material facts, and may only grant the motion if Appellants are entitled to judgment under the applicable substantive law, as the Court is obligated to apply the substantive standards that were applicable before the tribunal appealed from." Id. See also In re: Outdoors in Motion, Inc., Act 250 Amendment, No. 208-9-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Dec. 26, 2006) (Durkin, J.) (citing In re Appeal of Jolley Associates, 2006 VT 132, ¶ 9) ("[T]he

1

Court must review the material facts and may only grant Appellants' motion if [it is] determine[d] that the applicable law directs that Appellant[] [is] entitled to judgment).

The following facts are derived from the materials provided by Appellant, incuding facts stated in the District Commission decision not contested by Appellant. None of the exhibits referred to in the District Commission decision has been provided. See Re: Kevin L. Rogers, Inc., Permit #3W1010, Findings of Fact, Concl. of Law, & Order (Dist. #3 Envtl. Comm'n Apr. 20, 2009) [hereinafter District Commission Decision].

Appellant corporation owns a 2.33 acre parcel of property located at 555 Dairy Hill Road in Royalton, Vermont, of which .66 acres are involved in the project area. Appellant operates a trucking business from the property.

In January of 1996, Mr. Ernie Amsden acquired property adjoining Appellant's property. The Amsden property is served by a private spring or shallow well located near the westerly side of Appellant's property, which Mr. Amsden uses as his potable water source. In January 1996, when Mr. Amsden began using the spring, "Total Coliform and E. Coli were not present in the well." District Commission Decision at 6.

The spring is located approximately ten feet below the elevation of Dairy Hill Road, and approximately 90 feet from the edge of the road's paved surface. Stormwater runoff from Dairy Hill Road, which in the winter is regularly salted and sanded, "goes in the general area of [the Amsden] well." District Commission Decision, at 8.

The shallow well on Appellant's property is constructed of concrete tiles and covered by a concrete cap, which is in two pieces.[1] The seal between the lid and the shallow well "would not be considered satisfactory," for protecting the quality of the spring water, even "if the lid was solid." Id. Other than the cap, there is no structure or cover over the shallow well. The Vermont Water Supply Rules are not required to be

[1] The Court has not been provided with any information regarding whether the cap is in two pieces because it has been broken, or whether it was constructed in two pieces.

2

followed by a single private water source. From time to time, the lid to the shallow well has been left open, exposing the spring. It is difficult to keep springs and shallow wells free from coliform contamination without constructing a structure over the spring that meets the requirements in the Vermont Water Supply Rules. The construction and maintenance of this shallow well would not meet the standards in those rules.

Over an approximately ten-year period, starting in about 1997, Appellant constructed a stepped concrete block retaining wall running north to south, with the foot of the retaining wall located approximately five feet easterly of the spring. Appellant placed fill to the east of the retaining wall; the fill slopes upward to enlarge the flat area in the easterly half of the property available for placing or parking trucks. Sand appeared in the Amsden shallow well "[s]hortly after [Appellant] began bringing in fill." District Commission Decision, at 8.[2] The sloped area between the top of the retaining wall and the flat area in the easterly half of the property is covered with grass and will be allowed to revegetate naturally.

On November 17, 2008, Appellant submitted the present application for Act 250 Land Use Permit #3W1010, seeking approval to construct a 40 foot by 60 foot garage with a non-potable deep well water supply (to be used to wash vehicles inside the garage), and to grade a .66-acre area for Appellant's trucks. The application also sought approval of the previous fill and grading work and construction of the retaining wall.

The washwater from washing vehicles within the garage is proposed to drain through a floor drain to a sand/oil separator, and then through a pipe to discharge onto the ground below the elevation of the spring. It is designed so as not to affect the spring water.

---

[2] In addition, a "brown slimy substance" is found in the Amsden water lines, poultry founts and water filters, in the Town's water supply, and in deep wells beyond the influence of Appellant's property; it is not attributable to any actions on the part of Appellant.

Stormwater runoff from the half-acre of impervious area of the project is directed either to the north, to a ditch at the rear of Appellant's property that drains to an existing drainage area below the grade of the spring, or to the south over a grass slope into grass-lined drainage ditch toward a ditch located along Dairy Hill Road, which runs overland to an existing intermittent stream drainage that is near but slightly below the elevation of the Amsden shallow well.

On February 2, 2009, tests of the water in the Amsden shallow well indicated that levels of uranium, nitrate, nitrite, and arsenic were below the maximum contaminant limits applicable to public water supplies under the safe drinking water standards. Although the specific coliform bacterium E. coli was not present, coliform bacteria were present in the well, "which means that the water does not meet the standard for drinking water." District Commission Decision, at 6.

On April 20, 2009, the District Commission issued Permit #3W1010, which approved the previous construction of a retaining wall and placement of fill and grading on Appellant's property, as well as authorizing Appellant to construct a 40 foot by 60 foot garage, with a non-potable water supply from a separate deep well. The permit also authorized Appellant to grade a .66 acre area for a parking and staging area.

The Commission found there was "no evidence that directly links the project with the presence of Total Coliform in the Amsden spring," nor any "evidence to the contrary," and stated that "it may not be possible to identify the source of the contamination." District Commission Decision, at 9. However, in order to "insure that the project does not contribute to that contamination," id. at 10, the permit contained several conditions, the following three of which are at issue in this appeal.

Condition 14 requires Appellant, "[i]f allowed by Ernie Amsden, and with his permission," to "hire a professional to disinfect and retest the water . . . for total coliform and E. coli." If the water is still contaminated with either of these contaminants after the shallow well has been disinfected, Condition 14 requires

4

Appellant to "make improvements to the Amsden spring as recommended by the Department of Health, such as improving the area around the spring and constructing a structure over the spring," and requires Appellant to "retest" for these two contaminants. If the test results are still positive for total coliform or E. coli, Condition 14 requires Appellant to "provide an alternative potable water source for the Amsdens."

Condition 15 addresses the contaminants that were not exceeded in the February 2009 test. It provides that, "[i]n the event that Mr. Amsden tests the water in his existing spring for Nitrate, Nitrite, Arsenic, or Uranium and finds that levels exceed the acceptable State of Vermont drinking water standards," Appellant is required to "address the problem." Condition 15 also allows the District Commission, in that event, to "re-evaluate" Appellant's "obligations."

In Condition 16, the District Commission reserved the "right to evaluate and impose additional conditions with respect to the impact of this project on the Amsden spring potable water supply," for an indefinite period of time until the "termination of use of the spring serving the Amsden residence."

Imposition of Permit Conditions in Act 250 Permits

Pursuant to 10 V.S.A. § 6086(c), land use permits issued under Act 250 "may impose reasonable permit conditions within the limits of [the] police power to ensure that projects comply with the [Act 250] statutory criteria." In re Stokes Communications Corp., 164 Vt. 30, 38 (1995); see also In re Denio, 158 Vt. 230, 240 (1992); In re Quechee Lakes Corp., 154 Vt. 543, 550, n.4 (1990). Conditions imposed in an Act 250 permit "are deemed 'reasonable' and within the proper exercise of the police power when they are intended to alleviate an adverse impact that is or would otherwise be caused or created by a project." Re: Twin State Sand & Gravel Co., Inc. and New England Central Railroad, Inc., Permit #3W0711-5-EB, Finding of Fact, Concl. of Law, &

5

Order (Altered), slip op. at 20 (Vt. Envtl. Bd. Apr. 29, 2005); see also In re Allen Road Land Co., No. 2001-375, slip op. at 2 (Vt. April 2002) (unpublished mem.) ("[T]he Board may impose reasonable permit conditions to mitigate a project's adverse . . . impact" under an Act 250 criterion.). However, permit conditions "may only apply to impacts and components of the permitted development" itself, and therefore cannot be imposed to alleviate impacts that derive from other sources. Re: Green Crow Corp., Permit #3R0903-EB, Memorandum of Decision, slip op. at 3 (Vt. Envtl. Bd. June 14, 2006), rev'd on other grounds, 183 Vt. 33 (2007). Such conditions must be supported by findings and may not be based on "abstract concerns [that] never evolved past the point of speculation." In re Appeal of LiCausi, 2008 VT 59, ¶ 9, 184 Vt. 75 (striking down a condition in an air pollution permit).

Questions 6 and 8 relating to Act 250 Criteria 3 and 4

Question 6 of the Statement of Questions asks whether the District Commission or this Court has jurisdiction "to condition an Act 250 permit under 10 V.S.A. § 6086(c) requiring appellant to construct a new water system for Mr. Amsden where said permit condition is based upon 10 V.S.A. § 6086(a)(3)."

As the contested conditions were imposed by the District Commission under Criterion 1(B) (Waste Disposal), 10 V.S.A. § 6086(a)(1)(B), and not under Criterion 3 (Existing Water Supply), 10 V.S.A. § 6086(a)(3), Question 6 seeks a purely advisory opinion that is "beyond the scope of a court's authority to address." In re: Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.).

Similarly, Question 8 asks whether "permit conditions 14, 15 and 16 are reasonable and appropriate . . . if said permit conditions are based upon Act 250 criteria 1(B), 3 or 4." Because the contested conditions were not imposed under Criterion 3, as

6

stated above, or Criterion 4 (Erosion), 10 V.S.A. § 6086(a)(4), those portions of Question 8 relating to Act 250 Criteria 3 and 4 call for an impermissible advisory opinion.

Question 6, and the portions of Question 8 relating to Act 250 Criteria 3 and 4, must therefore be DISMISSED.

Question 7—Determination of Private Property Rights

Question 7 asks whether the District Commission or this Court has jurisdiction "to enter an order or orders or condition a permit approval where said order or orders and permit conditions require determinations of private property rights, including, but not limited to, private spring and easement rights."

While it is beyond this Court's subject matter jurisdiction to resolve questions of private property rights, see, e.g., In re: Britting, slip op. at 4., the contested conditions do not require this Court to determine Appellant's or Mr. Amsden's private property rights with respect to the spring. That is, the contested conditions are not premised on Appellant's being responsible for the water quality of the spring under whatever deeded rights or easements relate to the spring. Question 7 therefore also seeks an impermissible advisory opinion, id., and must be DISMISSED.

Question 1

Question 1 asks "[w]hether there is any substantial evidence demonstrating that the presence of total [coliform] and E. [c]oli in the well used by Ernie Amsden and located on [A]ppellant's property is a result of any actions taken by [A]ppellant on the project property."

The evidence reflects that the shallow well tested free of coliform contamination in 1996, and that sand was detected in the shallow well shortly after Appellant began the filling of the nearby land associated with the construction of the retaining wall, the foot of which is approximately five feet from the shallow well. The fill close to the

7

spring was placed as much as ten or twelve years ago, and has since become stabilized behind the retaining wall and by the establishment of grass on the slope. Nevertheless, because the permit application seeks approval of the fill and retaining wall, as well as of the garage and parking area, the fill placed near the spring in or around 1997 is a component of the project subject to the permit on appeal.

Because of the split cover and poor seal on the shallow well in its current condition, and because no water tests were conducted between 1996 and 2009, it is not possible to determine whether any original coliform contamination occurred in or around 1997, at the time that the sand entered the shallow well, due to the fill for the wall and attributable to Appellant. Other than that, no substantial evidence appears in the materials provided to the Court to demonstrate that the presence of coliform bacteria in the shallow well used by Mr. Amsden and located on Appellant's property is a result of any actions taken by Appellant on the project property. Rather, the evidence suggests that any current presence of coliform bacteria is due to the split cover and poor seal on the shallow well in its current condition, and the fact that it is left uncovered from time to time, which may allow the entry of contaminated surface water or other environmental influences such as direct contamination from animals.

Conditions 14, 15, and 16

The District Commission imposed Conditions 14, 15, and 16 to ensure compliance with Act 250 Criterion 1(B) (Waste Disposal). Criterion 1(B) requires that the project will meet any applicable state regulations regarding the disposal of wastes and "will not involve the injection of waste materials or any harmful or toxic substances into ground water or wells." 10 V.S.A. § 6086(a)(1)(B). In this de novo appeal, the Court must determine that each contested condition is necessary to prevent or alleviate any such waste disposal that is caused or may reasonably be caused by Appellant's project.

8

<u>Condition 15—Questions 3 and 8</u>

Condition 15 is not a reasonable or appropriate condition for two reasons. First, it is not supported by any of the evidence shown to the Court or referenced by the District Commission in its decision. As characterized by the District Commission's decision, the February 2009 water test showed that the water complies with the drinking water standards for nitrate, nitrite, arsenic, and uranium. No evidence showed that Appellant's project has affected or is likely to affect the shallow well with respect to these contaminants. Although the District Commission found that "Nitrate and Nitrite water test results would most likely be influenced by a change in surface conditions," District Commission Decision, at 6, the surface water runoff from Appellant's project is designed to be conducted away from the shallow well, and therefore not to affect it. It is not reasonable or appropriate to make Appellant responsible for correcting potential future contamination without evidence that such contamination would be caused by the permitted project.

Second, a requirement to "address the problem with the Commission" and "possibly [to] take future remedial measures" is too vague for a permittee to understand what could be required in the future. Permit conditions must be expressed with sufficient clarity to apprise the property owner of the limitations on land use. <u>In re Eustance</u>, 2009 VT 16, ¶ 41 (characterizing the holding in <u>Sec'y, Vt. Agency of Natural Res. v. Handy Family Enters.</u>, 163 Vt. 476 (1995)). The language of Condition 15 is unreasonable because it attempts to establish future obligations that are completely unknown.

Of course, District Commissions retain jurisdiction over the permits they issue, and the projects that those permits authorize, for the duration of the permit. <u>In re Eustance</u>, 209 VT 16, ¶ 19; Act 250 Rule 34(A). As discussed below regarding Condition 16, a District Commission does have authority to impose a condition requiring future testing and to hold future hearings to evaluate and impose additional conditions.

9

<u>Condition 14—Questions 1, 2 , 5, and 8</u>

Condition 14 requires Appellant to disinfect the shallow well and retest the water for total coliform and E. coli, and to take remedial measures—including constructing improvements to the shallow well—if the new tests are positive for either contaminant. If improvements "as recommended by the Department of Health," including improvements to the area around the spring and construction of a structure over the spring, do not result in clean tests for these contaminants, Condition 14 requires Appellant to provide an alternative potable water source for the Amsdens.

Only the initial disinfection requirements of Condition 14 are reasonable and appropriate, based on the evidence that sand entered the shallow well in or around 1997, when Appellant was engaged in placing fill on the land near the spring, as that past fill is an aspect of Appellant's project that is the subject of the permit. If any coliform bacteria entered the shallow well due to the placement of that fill, the initial disinfection would resolve any such past contamination and would allow whatever person or entity is responsible for maintenance of the shallow well to obtain technical advice regarding its current condition.

However, beyond the initial disinfection of the shallow well and water system, the retesting and remedial requirements of Condition 14 are neither reasonable nor appropriate, as there is no evidence showing that the current or future presence of total coliform in the shallow well is due to any aspect of Appellant's project that is the subject of the permit.

If the shallow well turns out to be subject to repeated or current contamination due to its current condition (that is, due to the broken cover or defective seals, or due to the lack of a superstructure), it is up to the party responsible for maintenance of the well to make those repairs or improvements. If, after such improvements, coliform contamination recurs, it may be appropriate at that time to require further testing or analysis on the part of Appellant. However, until and unless there is evidence that

current or future contamination is likely to be due to the project that is the subject of the permit, it is not appropriate to require Appellant to take the specified remedial actions.

Condition 16—Questions 1, 4, and 8

Under Condition 16, the Commission reserved the authority "to impose additional conditions with respect to the impact of this project on the Amsden spring potable water supply." Under Act 250 jurisprudence, a District Commission has the power to "exercise continuing authority over . . . the uses and conditions imposed by the permit" for the duration of that permit. In re Eustance Act 250 Jurisdictional Opinion, 209 VT 16, ¶ 19 (citing In re Juster Assocs., 136 Vt. 577, 580–81); see also Act 250 Rule 34(A) ("Continuing jurisdiction over all development and subdivision permits is vested in the district commissions.").[3] A District Commission therefore can reserve the right to amend the permit and impose additional conditions to ensure that the project complies with all Act 250 criteria. In re Wildcat Const. Co., Inc., 160 Vt. 631, 632 (1993) (enforcing permit condition that reserved the District Commission "the right to schedule site visits and public hearings to evaluate and impose additional conditions").

The District Commission in this instance, and hence this Court, therefore has authority to reserve the right to require future testing and to hold future hearings to evaluate and impose additional conditions, as was required in In re Wildcat. The Commission does not have authority unilaterally to impose additional future conditions without reopening the permit proceedings, so that any party could be heard and could appeal such later action. 10 V.S.A. § 6089.

---

[3] Act 250 permits are issued for an indefinite duration, except for certain permit types not applicable to this project, as long as there is compliance with the conditions of the permit. 10 V.S.A. § 6090(b)(1).

11

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Conditions 14, 15, and 16 are vacated; revised conditions 14 and 16 will be imposed by the Court consistent with this decision. On or before November 23, 2009, Appellant may submit a proposed judgment order containing such revised conditions, or, in consultation with the Land Use Panel of the Natural Resources Board, may request remand to the District Commission for it to issue revised conditions consistent with this decision.

Done at Berlin, Vermont, this 4th day of November, 2009.

_____

Merideth Wright
Environmental Judge