## In re Taft Corners Associates, Inc.

[632 A.2d 649]

No. 92-215

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Martin, Supr. J., Specially Assigned**

Opinion Filed April 30, 1993

Motion for Reargument Denied September 2, 1993

*Robert B. Hemley* and *Stewart H. McConaughy* of *Gravel and Shea*, Burlington, for Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *J. Wallace Malley, Jr.*, Assistant Attorney General, Montpelier, for Appellee Agency of Natural Resources.

*Francis X. Murray* and *Susan Gilfillan* of *McNeil & Murray*, Burlington, for Appellee City of Burlington.

*Gerald R. Tarrant* of *Tarrant and Marks*, Montpelier, for Appellee Williston Citizens for Responsible Growth.

*John T. Sartore* of *Paul, Frank & Collins, Inc.*, Burlington, and *Stephen S. Ostrach*, New England Legal Foundation, Boston, Massachusetts, for amici curiae Greater Burlington Industrial Corporation, Franklin County Industrial Development Corporation, Rutland Industrial Development Corporation, Bank of Vermont, Chittenden Bank, Franklin Lamoille Bank, Howard Bank, Merchants Bank, Vermont Federal Bank, and Vermont National Bank.

**Gibson, J.** Appellant Taft Corners Associates, Inc. (TCA) appeals from a decision of the Environmental Board, claiming that the Board exceeded the scope of its authority by deciding issues that were not raised before the district commission. We hold that the Board had no jurisdiction to decide issues that were not before the commission and reverse.

In October 1986, TCA filed an application for a permit to develop a 223-acre commercial and industrial park at Taft Corners in Williston. On July 31, 1987, the district commission issued findings of fact and conclusions of law under Act 250, 10 V.S.A. §§ 6001–6092, and granted a permit (1987 permit) authorizing Phase I of the development. The 1987 permit allowed TCA to construct 4,400 feet of roads and utilities and to subdivide 10 to 14 lots of a planned 37-lot commercial and industrial subdivision. The commission approved Phase I provided that TCA complied with thirty-six conditions contained in the per-

mit. Condition 5 allowed a maximum of 999 parking spaces and 145 peak-hour vehicle trips. Condition 6 provided:

> Prior to the commencement of construction on any lot within this subdivision the Permittee, Taft Corners Associates, and any purchaser or tenant of any lot shall file an amendment application under criteria 1(Air), 1(E), 1(B), 4, 7(fire services), 8 and 9(F). This amendment application shall be accompanied by evidence of conformance to the Findings under criteria 1(B), 2 and 3, 5 and 9(J) and shall file a cumulative impact statement.

Thus, the 1987 permit, known as an "umbrella permit" because it established conditions for the development as a whole, required TCA to obtain commission approval prior to construction on any lot in order to ensure that the conditions of the permit were fulfilled.

In January 1988, TCA filed a second application, requesting reconsideration of some conditions of the 1987 permit and approval for Phase II of the park. On April 27, 1988, the commission issued an amended umbrella permit (1988 permit) approving subdivision of the remaining lots and incorporating all conditions previously established, including the 1987 permit condition 6 that TCA obtain commission approval before construction on any lot. The 1988 permit amended condition 5, allowing 4,900 parking spaces (if there were no objections to the air quality permit, when filed) and 2,825 peak-hour vehicle trips.

In May 1991, TCA filed an amendment application seeking approval to construct a 114,513-square-foot Wal-Mart retail store and a 132,500-square-foot Sam's Discount Price Club for warehouse sales. Williston Citizens for Responsible Growth (WCRG) petitioned for party status on criteria 5 (traffic), 8 (aesthetics), and 10 (conformance with local and regional plans). The petition was accompanied by a motion to apply criterion 10, alleging that TCA's application constituted a significant change to the character of the development approved by the umbrella permit and did not comply with the revised town plan adopted after the permit was issued.

The district commission granted WCRG party status on criterion 8 (aesthetics), one of the criteria left open for consideration under amendment applications. The commission

determined, however, that WCRG would not materially assist the commission in determining whether the application was in conformance with criterion 5. Further, it concluded that the application proposed no "material change" in the project; thus, there were no grounds to reconsider criterion 10 beyond compliance with the umbrella permit. Accordingly, it denied WCRG's request for party status on criteria 5 and 10.

On November 15, 1991, the district commission issued findings of fact and conclusions of law on the amendment application under all criteria set forth in condition 6 of the 1987 permit, and granted a permit (1991 permit) to construct Wal-Mart/Sam's subject to thirty-four conditions. WCRG appealed the decision to the Environmental Board and requested a de novo hearing on all ten Act 250 criteria. The City of Burlington moved for party status on several criteria.

Prior to an evidentiary hearing, the Board requested briefs on preliminary issues related to the scope of review. On March 31, 1992, the Board ruled that its Umbrella Permit Policy required specific identification of the type and character of activities proposed "so that the potential impacts can be meaningfully reviewed," and that final approval under the Umbrella Permit Policy may be granted only on those aspects of a proposed project for which the impacts may be evaluated, such as natural resources at the site. Thus, the Board concluded that potential offsite impacts and impacts from individual uses cannot be addressed until the specific use of each tenant is identified. It determined that TCA's umbrella permit applications had not provided the specificity required by simply identifying a proposed project as "retail" or "major retail."

The Board also ruled that the district commission had not properly reviewed the earlier applications under several criteria and that each of those criteria must be reconsidered. The Board disagreed with TCA's argument that only those criteria listed in condition 6 of the 1987 permit were still open for review, maintaining that it had authority to "reopen[] parts of an umbrella permit in certain circumstances." Further, the Board ruled that the amendment application constituted a substantial change to the development approved in the umbrella permit "because many of the potential impacts from this project were never considered." Consequently, the Board remanded the

amendment application to the district commission to review under the criteria it had identified as inadequately reviewed during the umbrella permit application process.

TCA appeals from this decision, claiming that the Board exceeded its authority by addressing issues that were not raised before the district commission. It also argues that the Board (1) violated the doctrine of res judicata by overturning the umbrella permit, (2) offended due process by failing to provide notice that the permit was in jeopardy, and (3) disregarded rulemaking requirements by announcing that umbrella permits may not grant final approval on several criteria. Appellee Agency of Natural Resources (ANR) maintains that the Board's authority is not limited to issues raised before the district commission and that the other issues TCA raises are not properly before this Court because they were not brought before the Board. Further, it argues that the Board's determination that the amendment application proposed a substantial change to the umbrella permit was supported by substantial evidence, and that remanding to the district commission for review of the additional criteria was proper. Amici on both sides raise additional issues.

I.

We first address this Court's authority to consider this appeal prior to an administrative decision on the merits. WCRG and the City of Burlington argue that the Court has no jurisdiction to consider the appeal because the order from which TCA appeals is not a final order. We agree that TCA has not exhausted all administrative remedies as the Board's order remanded the case to the district commission for consideration of various criteria. See *In re Pelham North, Inc.*, 154 Vt. 651, 652, 578 A.2d 124, 124 (1990) (mem.) (Board's order remanding to district commission for further proceedings is not a final order).

Ordinarily, we decline to review a decision that is not a final disposition of the matter. *Id.* Nevertheless, where an agency has clearly exceeded its jurisdiction in an intermediate ruling, interlocutory review is appropriate. See *id.* at 652, 578 A.2d at 125. The Court has previously considered interlocutory appeals that challenge the extent of the authority of an adminis-

trative board. See, e.g., *In re Green Mountain Power Corp.*, 133 Vt. 107, 109, 329 A.2d 372, 373 (1974); *In re New England Tel. & Tel. Co.*, 131 Vt. 310, 314, 305 A.2d 598, 600 (1973). Because we conclude that the Board has clearly exceeded the scope of its authority, its intermediate ruling is properly before us. We limit our review, however, to those issues concerning the scope of the Board's authority.

We also note that appeals from decisions of the Environmental Board are brought pursuant to 10 V.S.A. § 6089(a) and 3 V.S.A. § 815(a). Under § 815(a), an intermediate ruling, such as this, is appealable only if review of the final decision would not provide an adequate remedy. "It must at least be shown that appeal of the ultimate order will not provide an adequate remedy or that the nature of the claimed defect in the order is such that the harm is greatly aggravated by delay." *In re Central Vermont Public Service Corp.*, 142 Vt. 138, 140, 453 A.2d 1108, 1109 (1982).

TCA maintains that the delay and expense associated with a remand to the district commission would effectively require it to abandon the Wal-Mart/Sam's project altogether after considerable expenditures over the past five years in reliance on the umbrella permit. We conclude that, where a decision clearly exceeds the jurisdiction of the Board and requires the applicant virtually to commence the application process again, the delay and expense involved justify our consideration of the interlocutory decision.

Amici WCRG and the City of Burlington contend that TCA must fulfill the requirements of V.R.A.P. 5 (interlocutory appeals) or V.R.A.P. 5.1 (appeals of collateral final orders), and that under either rule the appeal must be dismissed as untimely filed. We disagree. Appeals from administrative boards to this Court are brought pursuant to V.R.A.P. 13. The Reporter's Notes to this rule provide that "by virtue of 3 V.S.A. § 815(a), appeals of interlocutory rulings of administrative agencies should be treated as appeals from final decisions." Thus, we treat this appeal as an appeal from a final decision under V.R.A.P. 4, and conclude that the notice of appeal was timely.

ANR argues that TCA failed to raise the jurisdictional issues before the Board, and therefore, this Court lacks authority to

consider these issues on appeal. See 10 V.S.A. § 6089(c); *In re Denio*, 158 Vt. 230, 234, 608 A.2d 1166, 1168–69 (1992). Review of the Environmental Board record reveals that all of the issues regarding the scope of the Board's authority were raised before the Board and are thus properly before us. Because we do not reach the other issues raised before this Court, we need not consider whether failure to raise them below precludes our review on appeal.

II.

TCA contends that the Environmental Board did not have jurisdiction to decide issues that were not contested before the district commission. Thus, the only issues properly before the Board, according to TCA, were those raised by WCRG regarding criteria 5, 8, and 10. ANR maintains that, because the Board found that the amendment application involved a substantial change to the development as previously approved, it could remand the application to the commission for consideration under any of the Act 250 criteria. We do not agree with either position but, rather, conclude that the scope of the Board's review lies between these two positions.

In reviewing decisions of the Environmental Board, we afford great deference to the Board's interpretation of Act 250, even in appeals raising jurisdictional issues. *In re Denio*, 158 Vt. at 235, 608 A.2d at 1169. Thus, "absent compelling indication of error," we will uphold the Board's decision regarding the scope of its authority. *In re Killington, Ltd.*, 159 Vt. 206, 210, 616 A.2d 241, 244 (1992). Nevertheless, as an administrative body, the Board has only the adjudicatory authority conferred on it by statute, *In re Boocock*, 150 Vt. 422, 424, 553 A.2d 572, 574 (1988), and the courts may intervene where it exceeds the bounds of its enabling legislation. The statutory authority for appeals from a district commission to the Board is set forth in 10 V.S.A. § 6089(a), which provides that "[t]he Board shall hold a de novo hearing on all findings requested by any party."

The scope of a de novo hearing is thus limited to those issues raised in the notice of appeal. See, e.g., *In re Killington, Ltd.*, 159 Vt. at 214, 616 A.2d at 246; *In re Green Peak Estates*, 154 Vt. 363, 372, 577 A.2d 676, 681 (1990). Once an Act 250 crite-

rion is noticed for appeal, however, issues generally within the scope of the criterion are properly before the Board. *In re Killington,* 159 Vt. at 214–16, 616 A.2d at 246–47 (allowing new evidence to be presented concerning criterion 8(A) which was before the Board). In its original and amended notices of appeal, WCRG requested a de novo hearing on all ten Act 250 criteria.

The Board's jurisdiction is limited, however, by the scope of the proceedings below. It has no jurisdiction to decide issues regarding criteria that were not before the district commission and not ruled upon by it. *In re Vermont Gas Systems,* 150 Vt. 34, 40, 549 A.2d 627, 630 (1988). The district commission ruled on the criteria specified in condition 6 of the 1987 permit: 1 (air), 1(B) (waste disposal), 1(E) (streams), 4 (soil erosion), 7 (fire services), 8 (aesthetics) and 9(F) (energy conservation), as well as criteria 1(B), 2, 5 and 9(J) to determine compliance with the sewer, water, traffic and energy conditions of the umbrella permit. Ultimately, it decided there had been no showing of a significant impact on criterion 10 and thus no showing of a substantial change to the development as previously approved. As these were the issues before the commission, these are the issues that could properly be raised before the Board.

ANR argues that the Board has discretion to raise issues that were not brought before the commission, based on Environmental Board Rule (EBR) 40(D), which provides: "The scope of the appeal hearing shall be limited to those reasons assigned by the appellant why the commission was in error unless substantial inequity or injustice would result from such limitation." We do not decide whether this rule violates the more restricted mandate of 10 V.S.A. § 6089 because, in the instant case, the Board did not proceed under the rule. EBR 40(D) is not cited in its decision, nor is there any finding that substantial inequity or injustice would result from limiting review to those issues that were before the commission and raised in the notice of appeal.

ANR also argues that the Board could properly remand the application to the commission for consideration of additional criteria because the Board determined that the Wal-Mart/Sam's project involved a substantial change to the development as approved in the umbrella permit. EBR 34(B) provides that "[i]f a proposed amendment involves substantial changes to a

permitted project or permit, it shall be considered as a new application." In such circumstances, review under all ten criteria would be required before the commission in the first instance. See 10 V.S.A. § 6086(a) (before granting a permit, the district commission or Board shall find that the development satisfies all ten Act 250 criteria). A "substantial change" is defined as "any change in a development or subdivision which may result in significant impact with respect to any of the [ten] criteria." EBR 2(G); *In re Orzel*, 145 Vt. 355, 360–61, 491 A.2d 1013, 1016 (1985) (approving this definition).

In the proceedings before the commission, WCRG sought party status on criterion 10 on the ground that the amendment application represented a "significant change" to the development as approved because it did not conform to the new town plan. The commission ruled against WCRG and never considered whether the Wal-Mart/Sam's project involved a significant impact on any other criteria. Thus, before the Board, the question of substantial change was limited to consideration of the project's impact on criterion 10. Only if the Board found that the project may result in a significant impact on criterion 10 could it remand the application to the commission to consider as a new application. The Board made no such finding. Thus, the conclusion that the amendment involves a significant change to the development is not supported, and a remand for the commission to consider it as a new application was not proper.

WCRG also argued before the commission that the proposed project represented a "material change" to the development due to its size and market characteristics, as well as the reconfiguration of three lots into two lots. The commission ruled that, although reconfiguration of lot lines may flag a material change, it must have a significant impact on one or more of the ten criteria to trigger review; the commission concluded there had been no such showing here. On appeal before the Board, WCRG maintained that the lot reconfiguration had the potential to make significant impacts and thus constituted a substantial change, requiring review of the application under all ten criteria. We agree with the commission. A reconfiguration of the lots, by itself, is insufficient to establish a material or

substantial change. The reconfiguration must have significant impact on one of the ten criteria. Because WCRG raised the issue of substantial change only under criterion 10 before the commission, the Board is restricted to reviewing the application for substantial change under this criterion.

The arguments for upholding the remand would require rewriting the Board's decision. The order to remand the amendment application to the commission was not based on EBR 40(D) or a finding of a significant change but rather on the conclusions that umbrella permits can be "reopened" and that "many of the potential impacts from this project were never considered." We find no authority that allows the Board to "reopen" an umbrella permit. An umbrella permit is a final decision unless appealed within thirty days of issuance. See 10 V.S.A. § 6089(a). Because neither the 1987 umbrella permit nor the 1988 amendment was appealed to the Board, the findings, conclusions and permits are final and are not subject to attack in a subsequent application proceeding, whether or not they were properly granted in the first instance. "To hold otherwise would severely undermine the orderly governance of development and would upset reasonable reliance on the process." *Levy v. Town of St. Albans Zoning Bd. of Adjustment*, 152 Vt. 139, 143, 564 A.2d 1361, 1364 (1989).

III.

We address one final issue in the interest of judicial economy. In determining whether the project constituted a substantial change under criterion 10, the commission concluded there had been no showing that Wal-Mart/Sam's did not comply with the town plan "in effect at the time of the original permit." The Board ruled, however, that the project must be reviewed for compliance with the town and regional plans "in effect on the date that applications for approval of specific, identified uses are filed." TCA argues that, on remand, the Board must decide on the basis of the 1987 Williston Town Plan whether the amendment application may have a significant impact on criterion 10. We agree.

Criterion 10 was closed and TCA's rights vested in the 1987 plan when the period for appealing the umbrella permit

expired. Thus, the Board must determine de novo whether the amendment application complies with town and regional plans in effect in 1987. Cf. *In re Ross*, 151 Vt. 54, 57–58, 557 A.2d 490, 492 (1989) (no rights vested in town plan in effect at time of application where application was denied on merits and denial was affirmed before Board; new application must comply with new plan). If the Board finds that the application is not in compliance with these plans, and that it constitutes a substantial change to the development approved in the umbrella permit, then it may remand the application to the district commission to consider as a new application, which would be subject to town and regional plans in effect at the time it was filed.

*Reversed and remanded to the Board for a de novo hearing on the issues that were before the district commission and raised in the notice of appeal, namely:*

*whether the amendment application satisfies criteria 1(air), 1(B), 1(E), 7(fire services), 8, and 9(F);*

*whether the development complies with the conditions of the umbrella permit on criteria 1(B), 2, 5, and 9(J); and*

*whether the amendment application proposes a significant impact on criterion 10.*