**CITY OF BURLINGTON v. STATE OF VERMONT ENVIRONMENTAL BOARD**

**WILLISTON CITIZENS FOR RESPONSIBLE GROWTH v. STATE OF VERMONT ENVIRONMENTAL BOARD**

[669 A.2d 1184]

Nos. 95-369 & 95-370

October 17, 1995. Plaintiffs, Williston Citizens for Responsible Growth and City of Burlington, brought extraordinary relief petitions to obtain review of orders issued by the Vermont Environmental Board in the Act 250 permit proceedings of Taft Corners Associates to construct two buildings for use as retail and warehouse sales by Wal-Mart and Sam's Discount Price Club. Plaintiffs participated as parties before the Board. Neither plaintiff is, however, a party who may appeal to this Court from a judgment of the Board. See 10 V.S.A. § 6085(c) (listing parties who may appeal); *In re Cabot Creamery Coop.*, 164 Vt. 26, 28, 663 A.2d 940, 941 (1995).

We recently ruled that a party, not entitled to appeal, is also precluded from obtaining review in the nature of an appeal by filing a petition for extraordinary relief: "Petitioner may not challenge the merits of an Environmental Board decision by relying on the extraordinary relief provided by Rule 75. In other words, petitioner may not do indirectly what he cannot do directly. Such an end run circumvents the Legislature's intent." *Cabot Creamery*, 164 Vt. at 29, 663 A.2d at 941.*

---

* In *Cabot Creamery*, petitioner brought the extraordinary relief petition in superior court. This case was brought here, without going first to superior court. In view of our disposition, we do not decide whether this case should be dismissed for

Relying on *Cabot Creamery*, the Board and Taft Corners Associates, the permit applicant, move to dismiss this action.

Plaintiffs respond that an exception to *Cabot Creamery* exists to enforce a mandate of this Court that the Board has refused to follow. Specifically, plaintiffs charge that the Board has violated the mandate issued by this Court in *In re Taft Corners Assocs.*, 160 Vt. 583, 632 A.2d 649 (1993), a decision on an earlier appeal related to the permit in issue here.

The procedural posture of the case is complicated by the fact that applicant holds an "umbrella permit" to develop a 223-acre commercial and industrial park at Taft Corners in Williston. Under the terms of the umbrella permit, the applicant must obtain a further permit when it proposes to develop a lot within the park to show compliance with Act 250 criteria left open at the time of the umbrella permit and with specific umbrella permit conditions. Applicant obtained an individual development permit from the district environmental commission for the Wal-Mart and Sam's Club stores, but that permit was overturned by the Environmental Board, which found that the individual proposal required a reopening of parts of the umbrella permit. On appeal, we reversed the Board decision, concluding that the Board had exceeded its jurisdiction in reopening the umbrella permit and reaching issues not properly before it. We issued a specific mandate detailing the questions over which the Board properly had jurisdiction on remand:

> Reversed and remanded to the Board for a de novo hearing on the issues that were before the district commission and

failure to exhaust the superior court remedy. See V.R.A.P. 21(b) (complaint in original action for extraordinary relief in Supreme Court shall state why there is no adequate remedy by proceedings for extraordinary relief in superior court).

> raised in the notice of appeal, namely:
>
> [1] whether the amendment application satisfies criteria 1 (air), 1(B), 1(E), 7 (fire services), 8, and 9(F);
>
> [2] whether the development complies with the conditions of the umbrella permit on criteria 1(B), 2, 5, and 9(J); and
>
> [3] whether the amendment application proposes a significant impact on criterion 10.

*Id.* at 594, 632 A.2d at 655. Plaintiffs allege that rather than determining whether the development complies with conditions imposed to respond to criterion 5, the Board actually amended those permit conditions to allow the applicant to comply with criterion 5. This, they argue, was a violation of our mandate.

Without analyzing the precedents on which plaintiffs rely, we will assume that we have jurisdiction, at plaintiffs' behest, to enforce the specific provisions of our mandate. We conclude, however, that such jurisdiction would not extend to this proceeding, which is no more than an appeal of the Board order.

After this Court's decision, the Board held five days of hearings in February and March of 1994. One of the dominant issues in the hearings was whether the applicant had complied with certain permit conditions requiring road improvements to comply with criterion 5 on traffic impacts. To determine compliance, the Board first had to determine what the permit conditions were, a task made difficult because the critical condition incorporated by reference a stipulation and exhibits, which were subject to varying interpretations. Specifically, the 1987 stipulation incorporates Exhibit B, which lists recommended major road improvements in four stages. The stipulation further states that the "Town and the state will use their best efforts to accomplish the financing and construction of the

needed improvements," and the applicant "agrees to cooperate with the Town in paying its fair share of the off site improvements." Applicant argued that none of these improvements had to be made before permits were issued for individual lots because it had no responsibility to make the improvements. Plaintiffs argued that all the improvements had to be in place before an individual permit could be issued, irrespective of who was responsible for making the improvements.

The Board agreed with neither of the extreme positions. It concluded that it had to evaluate the traffic conditions at the time of each individual development request and require such improvements shown on Exhibit B "to ensure that the traffic generated by the Park does not cause unsafe conditions or unreasonable congestion." Applying this standard, the Board initially required extensive road improvements to Routes 2 and 2A, and improvements under the Interstate 89 bridge, to comply with the permit condition. Both the applicant and the Town of Williston sought amendments to this order.

The Board granted the motion of the Town. The Town argued that the evidence supported the need for certain intersection improvements but did not support the need to widen roads between the intersections. With one exception, the Board agreed and modified the list of required road improvements.

The Board denied most of the applicant's motion, but did amend a finding of fact as requested by the applicant. The original finding said that Exhibit B to the stipulation required a widening of Route 2A at Interstate 89 to provide two through lanes, plus a left turning lane, in each direction. The amended finding reads Exhibit B to require only one through lane in each direction.

Plaintiffs maintain that the umbrella permit condition requires full compliance with all of the road improvements in Exhibit B before any individual development permits may be issued. Plaintiffs also claim that the road improvements required by the Board were selected with no evidence or findings to support them.

The Board purported to determine what the umbrella permit conditions relating to traffic were and whether the individual development proposal complied with them. It did not purport to amend the umbrella permit conditions. Plaintiffs argue that, because the permit conditions are not what the Board found them to be, the Board must have amended them. We find this to be a creative recasting of the issues to create jurisdiction. As in *Cabot Creamery*, we find this to be an "end run" that circumvents the intent of the Legislature in limiting the parties that may appeal to this Court.

The Board's interpretation of the umbrella permit conditions imposed to meet criterion 5 may or may not be correct. Similarly, it may or may not be correct in its determination of what the applicant must do to meet these conditions. Whether or not correct on the merits, the Board followed our mandate in resolving these issues. Plaintiffs' petitions for extraordinary relief are nothing more than attempts to appeal how the Board resolved the issues. Because the Legislature has expressly precluded appeal by plaintiffs, we must dismiss this attempt to circumvent the legislative limitation.

*Petitions for extraordinary relief dismissed.*