## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 96-7-12 Vtec |
| Roger Rowe et al A250 Gravel Pit | DECISION ON THE MERITS |

This matter relates to an existing gravel pit located off Furnace Road in Pittsford, Vermont. Roger and Erma Rowe obtained an Act 250 land use permit to operate the gravel pit in 1980 (Permit #1R0387). In 2001, Casella Construction, Inc. and the Rowes applied for and received an Act 250 permit amendment in order to enlarge the pit (Permit #1R0387-2). Permit #1R0387-2 was appealed to the former Environmental Board, now the Land Use Panel of the Natural Resources Board, by a group of interested parties and the applicants. The parties reached a settlement agreement dated April 1, 2003. The Environmental Board issued Permit #1R0387-2-EB (the EB Permit), expressly incorporating additional conditions expressed within the parties' settlement agreement as well as the amended conditions from Permit #1R0387-2. Among other conditions, the EB Permit included conditions restricting the amendment of permit conditions regarding phasing, rates of extraction, and reclamation.

In February 2012, Casella Construction, Inc., Roger and Erma Rowe, and the State of Vermont (Applicants) filed an application to amend the EB Permit and expand the existing pit onto a portion of adjacent lands owned by the State of Vermont and to extract up to 100,000 cubic yards of gravel per year in five phases over a 20-year period (-3 Application). Casella had a pre-application meeting with Act 250 Coordinator William Burke. Casella's representative, Mr. Poirier, left that meeting with the understanding that Applicants were required to file a permit amendment application, not a new permit application.

Neighboring property owners (the Neighbors), most of whom were parties to the EB Permit negotiations, oppose the amendment, arguing that it is barred by the terms of the EB Permit, the parties' prior settlement agreement, and Act 250 Rule 34(E) (the *Stowe Club Highlands* doctrine).

On June 21, 2012, the District 1 Commission (the Commission) dismissed the -3 Application, concluding that the permit amendment was barred by both the terms of the EB Permit and Rule 34(E). Casella Construction, Inc. timely appealed the Commission's dismissal to this Court and raised four questions for the Court's review. These questions include whether its application should be treated as a new and distinct application and not an amendment, and, if treated as an amendment, whether the amendment application violates the non-amendment provisions in Applicants' EB Permit and Act 250 Rule 34(E). Our consideration of this matter was placed on inactive status while the parties litigated related issues in the Civil Division of the Vermont Superior Court.

In a July 22, 2015 decision on cross-motions for summary judgment, we announced our intention to grant summary judgment under Rule 56(f) to the Neighbors, on grounds that the pit had been fully reclaimed and jurisdiction under the EB permit had ceased, meaning that there was no longer a valid permit to amend. See In re Roger Rowe A250 Gravel Pit, No. 96-7-12 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 22, 2015). The parties filed responses, and we determined that issues of material fact existed regarding whether the pit was actually reclaimed. See In re Roger Rowe A250 Gravel Pit, No. 96-7-12 Vtec, slip op. at 2 (Vt. Super Ct. Envtl. Div. Sept. 11, 2015). We therefore scheduled the matter for a merits hearing on the limited issue of whether the pit was in fact reclaimed.

The Court conducted a site visit to the subject property on January 13, 2016, immediately followed by a single day merits hearing at the Vermont Superior Court, Rutland Criminal Division courthouse in Rutland, Vermont. Appearing at the site visit and trial were Casella Construction, Inc., represented in this appeal by Harry R. Ryan, Esq.; Mary Marzec-Gerrior, represented by Benjamin W. Putnam, Esq.; the Natural Resources Board represented by Gregory J. Boulbol, Esq.; and interested party Kelly Lyon appearing pro se.

Based upon the evidence presented at trial, which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. In 1980, Roger and Erma Rowe obtained Land Use Permit #1R0387 to operate a gravel pit on their property off Furnace Road in Pittsford, Vermont (the Rowe Pit).

2.      The Rowe Pit encompassed an area of 19.6 acres of the total 53.9 acres owned by the Rowes.

3.      In 2001, Casella Construction, Inc. and the Rowes applied for and received an Act 250 permit amendment to enlarge the Rowe Pit (Permit #1R0387-2).  A group of interested parties, including the Marzec-Gerriors, appealed Permit #1R0387-2.

4.      On February 12, 2003, the Rowes and Casella Construction, Inc., entered into a settlement agreement with the interested parties, including the Marzec-Gerriors.

5.      On April 17, 2003, the Environmental Board issued amended Act 250 Land Use Permit #1R0387-2-EB  (the EB Permit) with three conditions.

6.      Condition 1 of the EB Permit expressly incorporates all but conditions 3 and 14 of Permit #1R0387-2.  It also incorporates additional conditions expressed within the parties' settlement agreement.[1]

7.      Permit #1R0387-2 authorized the extraction of 100,000 cubic yards of gravel annually from the Rowe Pit; the construction of a temporary scale, scale housing building, and washroom facilities adjacent to the existing gravel extraction operation; and progressive reclamation as the Rowe Pit expanded.

8.      Condition 33 of Permit #1R0387-2, which was incorporated into the EB Permit, required that all gravel extraction and site reclamation be completed by September 15, 2010.

9.      Condition 7 of Permit #1R0387-2, which was incorporated into the EB Permit, provided "The commercial extraction from the pit shall cease, and the entire site be certified by affidavit to the town and to the commission as fully reclaimed no later than October 15, 2010."

10.     The Rowe Pit was excavated in four phases, with reclamation occurring at the conclusion of each phase.

---

[1] This settlement agreement has been the subject of litigation between these same parties before the Vermont Superior Court, Civil Division.  This Court admitted a copy of the settlement agreement as Exhibit 4.  The Court required all text in the settlement agreement except for the "Agreed Permit Conditions" to be redacted because Attorney Putnam conceded that only the additional conditions were relevant to the issues before the Court, and because the agreement was subject to a confidentiality clause.  Casella asked the Court to rule definitively that the language in the EB Permit incorporating "the terms of the parties' settlement agreement" incorporates only the *conditions* in the settlement agreement (and not the preamble language).  Because we ultimately find that the permit is expired, see infra p. 11, we decline to authoritatively construe the EB Permit on mootness grounds and because there was no offer that other provisions are relevant to the issues before the Court.

3

11.     Casella completed phases I through III, including reclamation, without complaints or violations.

12.     In October 2010, Ms. Lyon contacted Robert Steadman, Chief Financial Officer (and de facto general manager) of Casella, and informed him that Casella was operating in violation of its permit, as the EB Permit required phase IV to be completed by October 15, 2010.

13.     As Casella failed to timely complete and close the Rowe Pit, it self-reported to the Act 250 District Coordinator to resolve the violation.

14.     Casella worked cooperatively with the Land Use Panel of the Natural Resources Board and accepted, without appeal, a November 17, 2010 Administrative Order (AO).

15.     The AO set new reclamation deadlines.  The AO required and authorized Casella to complete the grading portion of the reclamation procedures by December 23, 2010.

16.     The AO also required and authorized Casella to complete the remaining portions of the reclamation procedures by June 17, 2011.

17.     The approved reclamation procedures required Casella to "hydroseed" exposed gravel areas and to plant a specified number of trees at specified locations.   Casella was to see that all seeded areas were watered and kept in good condition and reseeded if and when necessary until a good, healthy, uniform growth was established over the entire area seeded.

18.     Casella retained Transamerica Hydroseeding to perform the hydroseeding, and Transamerica completed hydoseeding of phase IV prior to June 17, 2011.

19.     Seeds used for reclaiming the Rowe Pit were a seed mixture recommended by the USDA specifically for reclamation of gravel pits.

20.     This hydroseeing mixture has unique germination and dormancy periods, which will remain dormant for longer than native grass. While native grass will be green by May, the grass variety used at the Rowe Pit will still be dormant.

21.     The reclamation vegetation at the Rowe Pit will always appear different than native vegetation of hay fields.

22.     Casella retained Pradico (a landscaping service) to plant trees as required by the reclamation plans.

4

23. Jeff Chase is a Casella engineer. He was responsible for establishing reclamation elevations and grades in conformance with approved reclamation plans and for verifying the hydroseeding and tree planting work.

24. By the end of December 2010, Mr. Chase confirmed that slope grades and elevations were close to complying with approved reclamation plans. In the spring of 2011, Mr. Chase confirmed that slope and elevations met or exceeded the requirements of the reclamation plans.

25. Mr. Chase concluded that reclamation was complete by June 17, 2011.

26. After the June 17, 2011 deadline for reclamation in the AO, Act 250 Compliance Officer John Wakefield performed a site visit. Representatives from Casella were present, as was Amy Loomis, the zoning administrator for the Town of Pittsford.

27. After that meeting, John Steadman (the CFO and general manager) was under the impression that the Act 250 Compliance Officer considered the pit to be reclaimed. Casella was not contacted about any other enforcement and, as far as it knew, the matter was resolved.

28. As part of the EB Permit, Casella was required to post a bond with the Town of Pittsford, which could be recovered when the pit was fully reclaimed. Amy Loomis, the zoning administrator, released this bond after the June 17, 2011 site visit.

29. We therefore find, as a matter of fact, that Casella timely complied with the December 23, 2010 and June 17, 2011 reclamation requirements of the AO.

30. Casella did not certify by affidavit to the Town or to the Commission by October 15, 2010 that commercial extraction ceased or that the site was reclaimed, because neither had taken place by that date. Casella did not certify by affidavit that reclamation had been completed by June 17, 2011 (the deadline for reclamation in the AO). The AO did not require a similar affidavit.

31. Tropical Storm Irene crossed the Rowe Pit in late August 2011.

32. In the fall of 2011, Casella again retained Transamerica Hydroseeding to perform additional hydroseeding in areas where stormwater had washed away vegetated ground cover.

33. Mathew Poirier is a Professional Engineer with Sanborn, Head & Associates, Inc., whom Casella employed to assist with Act 250 permitting and reclamation work.

34. Mr. Poirier was responsible for supervising reclamation work.

35. Mr. Poirier participated in a site visit to the Rowe Pit in 2012 with Act 250 Coordinator William Burke. Mr. Poirier showed Coordinator Burke that phases I through IV were complete and reclaimed as required.

36. Around this time, Casella was contemplating opening expanded gravel extraction operations on the Rowe property.

37. Mr. Poirier met with Coordinator Burke in advance of filing an application for this expansion. Mr. Poirier offered that it was appropriate to file an application for a new permit for this expansion, not a permit amendment, since Casella sought approval for a new gravel extraction operation on a separate and distinct area of land. Mr. Poirier was under the impression that Coordinator Burke would require a permit amendment application, not a new permit application.

38. On February 17, 2012, Appellants filed an application to amend Permit #1R0387-2 (the -3 Application). The -3 Application proposes the extraction of 100,000 cubic yards of gravel from 15.6 acres of land owned by the Rowes and the State of Vermont.

39. The project proposed in the -3 Application shares access with the Rowe Pit, and significant portions of the Rowe Pit are proposed for staging and operational requirements.

40. Of the 15.6 acres proposed for excavation under the -3 Permit, 5.9 acres are owned by the State of Vermont and 9.7 acres are owned by Roger and Erma Rowe. Of the 9.7 acres owned by the Rowes, 5.7 acres overlap with the area permitted under the EB Permit.

41. The -3 Application proposes the construction of a temporary scale, scale housing building, and washroom facility within the Rowe Pit's footprint.

42. Pursuant to the -3 Application, extraction is proposed to occur in five phases over the course of 20 years.

43. Mary Marzec-Gerrior lives on Furnace Road in Pittsford, Vermont. Her property abuts the Rowe property to the south. While standing on the common boundary of the Marzec-Gerrior and Rowe properties one has limited views of the Rowe Pit. There are no views of the Rowe Pit from the Marzec-Gerrior house.

44. Kelly Lyon lives on Furnace Road in Pittsford, Vermont. Her property abuts the Rowe property to the south. Ms. Lyon's property is located to the west of the Marzec-Gerrior property. While standing on the common boundary of the Lyon and Rowe properties, one has limited views of the Rowe Pit. There are no views of the Rowe Pit from the Lyon house.

45. In April 2012, the Neighbors, including Ms. Marzec-Gerrior and Ms. Lyon, filed motions to dismiss the -3 Application, arguing that the plain terms of the EB Permit barred further expansion of the Rowe Pit.

46. On June 21, 2012 the Commission dismissed the -3 Application, determining that the -3 Application was properly characterized as an amendment to the EB Permit rather than a new application for a separate and distinct project and that the terms of the EB Permit prohibited amendments.

47. Casella appealed the Commission's decision dismissing the -3 Application.

48. This Court's consideration of the -3 Application was placed on inactive status while the parties litigated a collateral issue in the Civil Division of the Vermont Superior Court.

## Conclusions of Law

The fundamental issue in this case is whether the gravel extraction Casella proposes in its -3 Application requires an amendment to its EB Permit or a new Act 250 permit altogether. This distinction is significant because Act 250 Rule 34(E) and the terms of Casella's EB Permit restrict permit amendments, but no such limits exist for new permit applications.

As originally framed by the parties, the answer to this question hinges on whether the gravel extraction Casella proposes is within the scope of the development permitted in Casella's previous permit (the EB Permit). See Act 250 Rules, Rule 34(A) (requiring a permit amendment for "any material change to a permitted development or subdivision"); see also In re Stonybrook Condominium Owners Association, No. 385, Findings of Fact, Conclusions of Law, and Order, at 17–18 (Vt. Envtl. Bd. May 18, 2001) (discussing scope of permitted project under Rule 34(A)); In re O'Neil Sand & Gravel, No. 48-2-07 Vtec, slip op. at 8–10 (Vt. Envtl. Ct. Sept. 11, 2009) (discussing Stonybrook). Both the original Act 250 permit and the EB Permit authorized gravel extraction operations on the Rowe's 53.9 acre parcel. Although the extraction occurred on a 19.6 acre portion of the parcel (the Rowe Pit), the entire tract falls under Act 250

7

jurisdiction.  See Stonybrook, No. 385, at 14.  Casella now seeks approval for a gravel extraction operation on 15.6 acres, 5.9 of which are on land owned by the State of Vermont and 9.7 of which are on land owned by the Rowes, which is also land under jurisdiction of the EB Permit.

As the Court analyzes the issues raised in this appeal, we conclude that the determinative issue in this case is not whether the proposed project is within the scope of the project permitted by the EB Permit, but whether Act 250 jurisdiction over Casella's previous operations and the Rowe land had expired by the time Casella applied for its -3 Permit.  If so, there was no longer any permit to amend, and Casella's proposal requires a new permit, not an amendment.[2]

For most types of development, an Act 250 permit, and thus Act 250 jurisdiction, remains in place indefinitely.  See 10 V.S.A. § 6090(b)(1) ("Other permits issued under this chapter shall be for an indefinite term, as long as there is compliance with the conditions of the permit.").  The Legislature has elected, however, to establish separate rules for permits for the extraction of mineral resources and requires that those permits be for a "specified period determined by the board in accordance with the rules adopted under this chapter. . . ."  10 V.S.A § 6090(b)(1).  The Natural Resources Board Act 250 Rules therefore require that permits granted for extraction of mineral resources "contain specific dates for completion of the project, reclamation of the land, and for expiration of the land use permit."  Act 250 Rules, Rule 32(B).

The EB Permit includes specific dates for completion of the project and reclamation of the land.  Condition 33 provides, "All gravel extraction and site reclamation shall be completed in accordance with the approved plans by September 15, 2010 unless an extension of this date is approved in writing by the Commission."  Condition 7 requires that "commercial extraction from the pit shall cease, and the entire site be certified by affidavit to the town and to the commission as fully reclaimed no later than October 15, 2010."

The EB Permit does not, however, contain an explicit expiration date. Nevertheless, because all actions were scheduled to cease by October 15, 2010, the EB Permit does contain

---

[2] We provided this analysis first in our July 22, 2015 decision on cross-motions for summary judgment and we continue this analysis in this decision.

an implicit date the permit was to expire. Further, we conclude that, when read together, the dates of completion—September 15, 2010—and reclamation—October 15, 2010—effectively establish a valid expiration date contingent on completion and full reclamation. As the Supreme Court has held, even when a permit has nominally expired, Act 250 jurisdiction continues if reclamation has not been properly completed. See In re Hamm Mine Act 250 Jurisdiction (Jurisdictional Opinion No.2-241), 2009 VT 88, ¶ 19, 186 Vt. 590. Therefore, because Act 250 jurisdiction ceases once reclamation is complete, see id., we conclude that jurisdiction in this case ceased when reclamation was, in fact, complete.

The parties dispute whether the project authorized by the EB Permit was reclaimed. Based upon the credible evidence, we conclude that the Rowe Pit was reclaimed in June of 2011. Mr. Steadman, Mr. Chase, and Mr. Poirier all testified to their personal involvement and knowledge of Casella's efforts to reclaim the Rowe Pit and all provided their opinion that the Rowe Pit was reclaimed by June 17, 2011, with additional reseeding being completed following Tropical Storm Irene. The Court finds this testimony credible, and concludes that reclamation was complete by June 17, 2011.

Ms. Marzec-Gerrior testified that she did not believe that the Rowe Pit was reclaimed. Ms. Marzec-Gerrior admitted that she had limited personal observations of the Rowe Pit in 2011 and 2012, that she could only see portions of the Rowe Pit from her property, and that she never asked permission to go into the Rowe Pit to make observations. Ms. Lyon introduced into evidence two pictures taken by her sister on the morning of September 1, 2011. These photographs show substantial ground vegetation within the Rowe Pit. The pictures also show areas without vegetation. Casella's witnesses all credibly testified that, while the Rowe Pit was fully hydroseeded (and all required trees planted) in advance of Tropical Storm Irene, the significant rains washed away some ground vegetation. These same witnesses also testified that these areas were reseeded shortly after the storm.[3]

---

[3] The evidence supports our conclusion that reclamation was complete during the summer of 2011, as that is "when a good, healthy, uniform growth [was] established." The most conservative conclusion of complete reclamation, considering the evidence regarding reseeding which occurred shortly after Tropical Storm Irene, continues to support full reclamation well in advance of the February 2012 -3 Application.

Over the objection of Casella, the Court admitted Exhibit 7, which is a GoogleEarth satellite photograph of the Rowe Pit. Ms. Marzec-Gerrior, the sponsor of the Exhibit, testified that the date of the photograph was May 5, 2015. Ms. Marzec-Gerrior offered that Exhibit 7 is evidence that the Rowe Pit was not reclaimed because the area around the pit appears more brown than the agricultural areas of the Rowe property and neighboring properties, which appear green. We disagree. In rebuttal to Exhibit 7, Mr. Poirier testified that the seed used to reclaim the Row Pit was a mixture recommended by the USDA for reclamation of gravel pits and that the reclamation vegetation from this seed has unique germination and dormancy time periods. According to Mr. Poirier's credible testimony, hydroseeded grass would still be dormant in early May (when the photo was taken), while grass in Vermont hay fields would already be green. Furthermore, Mr. Poirier testified that the reclamation vegetation will always appear different than native vegetation of hay fields. Lastly, we note that Exhibit 7 is from May 2015, while reclamation activities were completed in 2011. The approved reclamation procedures required that all seeded areas be watered and kept in good condition, and reseeded if and when necessary <u>until</u> a good, healthy, uniform growth was established over the entire area seeded. We conclude that a good, healthy, uniform growth was established by the state inspection in June 2011, and that Casella's obligations under the AO ceased at that time. Even if Exhibit 7 showed that the area around the Rowe Pit had no vegetation in 2015, this could be because of intervening events, and does not show that Casella failed to reclaim the area in 2011. Again, based on the totality of the evidence, we conclude that the Rowe Pit was reclaimed in 2011.

Ms. Marzec-Gerrior, with the NRB's support, argued that the Court could not conclude that the Rowe Pit was reclaimed because no affidavit was filed with the Board certifying that the entire site was fully reclaimed no later than October 15, 2010 as required by condition 7 of Permit #1R0387-2, which is incorporated into the EB Permit.[4] First, Mr. Poirier credibly testified

---

[4] Ms. Marzec-Gerrior also suggested that Casella was required to certify compliance with its permit under Act 250 Rule 37 in order for jurisdiction to end and reclamation to be complete. But Act 250 Rule 37 merely provides an opportunity for permittees to seek certification of compliance. The Rule states, "a person may petition for a certification upon completion . . . ." Act 250 Rules, Rule 37. Because the Rule does not use mandatory language, but instead uses the term "may," we do not consider Rule 37 to impose a mandatory requirement, and

that such an affidavit could not have been filed on or before October 15, 2010 because the Rowe Pit was not reclaimed by that date. Second, Ms. Marzec-Gerrior suggested that this language required a distinct affidavit, and that, because Casella had not submitted an affidavit certifying completion after the June 17, 2011 inspection, the site cannot be considered reclaimed. We disagree. Casella and the Land Use Panel of the NRB negotiated the November 17, 2010 AO specifically addressing the necessary reclamation activities as a result of the missed October 15, 2010 deadline. We consider this enforcement proceeding to take the place of any affidavit requirement because the enforcement proceedings gave the NRB the same opportunity to ensure compliance that an affidavit requirement would have done.

Based upon the evidence before the Court, we conclude that Casella completed all reclamation activities required by the EB Permit and the AO by June 17, 2011, and that jurisdiction over the permit expired when reclamation was complete. The -3 Application was filed with the District Commission on February 17, 2012. As Act 250 jurisdiction over the Rowe parcel had already ceased to exist, the Rowe Pit was no longer encumbered by the EB Permit or Act 250 jurisdiction. Therefore, there was no valid Act 250 permit to amend. Because Applicants propose a new development of the Rowe Pit and state lands, constituting an independent trigger of Act 250 jurisdiction, Applicants must seek a new Act 250 permit authorizing mineral resource extraction of the Rowe Pit and adjacent state-owned lands. See 10 V.S.A. § 6081(a) (requiring permits for "development"); 10 V.S.A. § 6001(3)(A) (defining "development").

Casella asks that the Court treat the pending -3 Application as a new independent application without remanding the application to the District Commission. The Neighbors and NRB object to this approach, arguing that the District Commission must first consider the application. As the District Commission dismissed the -3 Application on procedural grounds, and did not consider the merits of the application's compliance with Act 250 Criteria, we conclude that the application must be remanded to the District Commission for its review. See In re Taft Corners Assocs., 160 Vt. 583, 591 (1993) ("The Board's jurisdiction is limited, however,

---

we do not find Casella's reclamation incomplete simply because they did not elect to obtain a certificate of compliance under Rule 37.

11

by the scope of the proceedings below. It has no jurisdiction to decide issues regarding criteria that were not before the district commission and not ruled upon by it.").

### Conclusion

We conclude that the Rowe Pit was reclaimed as required by the EB Permit and AO, that Act 250 jurisdiction over the Rowe property no longer exists, that Casella proposes a new development of the Rowe Pit and state lands constituting an independent trigger of Act 250 jurisdiction, and therefore, that Applicants must seek a new Act 250 permit authorizing mineral resource extraction of the Rowe Pit and adjacent state-owned lands. We therefore **DISMISS** the pending appeal and **REMAND** the -3 Application to the District Commission for consideration as a new application.

Also pending before the Court is a related matter, <u>Conditional Use Application of Rowe</u>, No. 102-7-11 Vtec. We have coordinated this Act 250 appeal and the conditional use appeal pursuant to V.R.E.C.P. 2(b). At the request of the parties, we place the conditional use appeal on inactive status to await the decision of the District Commission on remand and any potential appeal of that decision. In the conditional use appeal, Casella is to report in writing with the Court every six months on the status of its Act 250 approval.


Electronically signed on January 19, 2016 at 03:40 PM pursuant to V.R.E.F. 7(d).


_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division