# STATE OF VERMONT

SUPERIOR COURT                  ENVIRONMENTAL DIVISION

Docket No. 101-9-16 Vtec

| | |
|---|---|
| Mathez Act 250 LU Permit | Decision on Motion |

## Decision on Motions

This is an appeal from District 7 Environmental Commission's Act 250 Notice Minor Application #7R1367, dated August 25, 2016, and Proposed Land Use Permit 7R1367, dated "xxth day of September, 2016."[1] Permittees and Appellants Lori and Richard Mathez are represented by David L. Grayck, Esq. Wyle Solomon and Sung-Hee Chung, who have filed a cross-appeal, are represented by Megan R.H. Hereth, Esq.

A number of motions are now pending, including Appellants' motion for summary judgment and motion to dismiss the cross-appeal[2], and Mr. Solomon and Ms. Chung's motion to intervene. For the reasons set out below, we **GRANT** the Mathezes' motion for summary judgment and dismiss the matter in its entirety.

## Background and Procedural History

On May 9, 2016,[3] Lori and Richard Mathez (the Mathezes) applied for an Act 250 land use permit to construct a 75' x 100' steel building on their land at 372 Breitmeyer Drive in Craftsbury, Vermont. The application lists Robert and Suzanne Griffiths, Robert and Barbara Strong, Leonard Sussman, and Peter Johnson as adjoining landowners. The application also lists Robert and Barbara Strong and Wyle Solomon (but not his wife, Sung-Hee Chung) under a section titled "Others With Significant Interest(s) in Property," noting that the interest in question is: "shares driveway."

---

[1] The permit was proposed; the date was not yet filled in.

[2] Appellants also filed a motion for judicial notice, which they subsequently withdrew at a hearing on May 16, 2017.

[3] The application is dated May 3, 2016. The Act 250 notice states that the application was filed May 9, 2016.

1

District Coordinator Kirsten Sultan sent notice of the application on behalf of the District 7 Environmental Commission (the District Commission) on May 20, 2016. The notice indicates that the District Commission was reviewing the application as a minor permit application, and that no hearing would be held unless a hearing request was made. Personal notice was sent to all persons listed as adjoining landowners on the application. Notice was also published in the Hardwick Gazette, a local newspaper.

On June 17, 2016[4], the Commission issued the Act 250 permit to the Mathezes.

Wyle Solomon and Sung-Hee Chung live at 89 Breitmeyer Drive. The Mathezes have a deeded right of way along the eastern border of Mr. Solomon and Ms. Chung's property which they use to access 372 Breitmeyer Drive.

In an affidavit, Ms. Chung states that she was not aware of the Mathez's Act 250 permit until July 21, 2016, when she saw a significant increase in truck traffic on the right of way. On July 21, 2016, Ms. Chung told Ms. Sultan via email that she believed she should have received notice of the Act 250 permit application.

Ms. Chung states in her affidavit that at a subsequent meeting, Ms. Sultan and Greg Boulbol, Esq., counsel for the Natural Resources Board (NRB), told her and Mr. Solomon that they could attempt to work out any issues with the Act 250 permit with the Mathezes and, if that failed, the District Commission would revoke and re-notice the Mathez's Act 250 permit based on the failure to give Ms. Chung and Mr. Solomon notice of the application. Ms. Chung states that she and her husband did not appeal the June 17, 2016 Act 250 permit in reliance on these representations.

On August 25, 2016, Ms. Sultan, on behalf of the District Commission, sent personal notice of the Mathez's Act 250 application to the same parties who were personally noticed in the first application, and also to Ms. Chung and Mr. Solomon. The notice indicated that because of "'notice' concerns identified following the initial review," the District Commission would be considering the application anew. The District Commission also issued a new, proposed Act 250 permit.

The Mathezes appealed the August 25, 2016 notice and the new proposed Act 250 permit to this Court, challenging the District Commission's authority to re-notice the permit application. Ms. Chung and Mr. Solomon filed a motion to intervene on September 13, 2016, and a cross-

---

[4] The permit is dated June 15, 2016, and was sent to the Craftsbury Town Clerk to be recorded on June 17, 2016.

appeal on November 2, 2016. On January 18, 2017, the Mathezes filed a motion for summary judgment. Ms. Chung and Mr. Solomon filed an opposition to the motion on March 3, 2017, and the Mathezes filed a reply on March 15, 2017.

We held a hearing on the pending motions on May 16, 2017 in the Costello Courthouse in Burlington, Vermont.

## Discussion

### I.      Interlocutory or Final Appeal

Ms. Chung and Mr. Solomon's opposition to the summary judgment motion refer to the matter now before us as an "interlocutory appeal," under the theory that the District Commission has not yet fully adjudicated the re-noticed permit application. By pointing out that the matter is an interlocutory appeal, Ms. Chung and Mr. Solomon appear to call into question whether this matter is properly before the Court. The Mathezes argue that the matter is properly before the Court, because they are appealing "an act or decision" by a District Commission pursuant to 10 V.S.A. § 8504(a).

An interlocutory appeal is an appeal of a decision that does not render final judgment on a matter. 12 V.S.A. § 2386(a). Here, the District Commission initiated a proceeding by re-noticing the Mathezes' Act 250 permit on August 25, 2016. The Mathezes appealed that re-noticing to this Court, and the District Commission subsequently stayed its own proceeding. This is, therefore, an interlocutory appeal in that it is an appeal of a decision that is not a final judgment.

In reviewing whether the matter is properly before us, we find In re Taft Corners Assocs., Inc., 160 Vt. 583 (1993) instructive. In that case, a developer was granted an Act 250 "umbrella permit" establishing conditions for a large development as a whole, and requiring that further Act 250 permits be obtained in order to develop individual lots within that larger development. Id. at 586. The developer subsequently applied for a permit to develop an individual lot. Id. On appeal, the Environmental Board concluded that when reviewing the subsequent permit application, it had the authority to re-open and re-consider parts of the umbrella permit.[5] Id. at 587–88. The developer appealed that decision to the Supreme Court. Id. at 588.

---

[5] Prior to 2005, District Commission decisions were appealed to the Environmental Board. 1993, Adj. Sess., No. 232, § 34. In 2003, the legislature passed the Permit Reform Act, which shifted appellate review of District Commission decisions to the Environmental Court. 2003, Adj. Sess., No. 115, § 58. In 2010, the Environmental Court became the Environmental Division. 2009, Adj. Sess., No. 154, § 7.

The Supreme Court began its analysis by addressing its own "authority to consider th[e] appeal prior to an administrative decision on the merits." Id. The Court explained that, while it ordinarily only reviews final decisions, "where an agency has clearly exceeded its jurisdiction in an intermediate ruling, interlocutory review is appropriate." Id. (citing In re Pelham North, Inc., 154 Vt. 651, 652 (1990) (mem.)). The Court noted that under the Vermont Administrative Procedure Act, an intermediate ruling by an administrative agency is appealable "if review of the final decision would not provide an adequate remedy," Id. at 589 (citing 3 V.S.A. § 815(a)[6]), "or that the nature of the claimed defect in the order is such that the harm is greatly aggravated by delay," Id. (citing In re Central Vermont Public Service Corp., 142 Vt. 138, 140 (1982). The Court concluded that "where a decision clearly exceeds the jurisdiction of the [Environmental] Board and requires the applicant virtually to commence the application process again, the delay and expense involved justify our consideration of the interlocutory decision." Id.

Our own Court rules bring us to the same controlling law that the Vermont Supreme Court applied in Taft Corners. When a matter is appealed to the Environmental Division, the Vermont Rules of Appellate Procedure apply except as modified by our own Court rules. V.R.E.C.P. 5(a)(2). Because our rules are silent regarding interlocutory appeals (apart from appeals regarding party status, see V.R.E.C.P. 5(d)(1)), we look to the Rules of Appellate Procedure. V.R.E.C.P. 5(a)(2). As discussed in Taft Corners, V.R.A.P. 13 applies to appeals from agency decisions, and the Reporter's Notes for that rule instruct that appeals from interlocutory agency decisions should be reviewed pursuant to 3 V.S.A. § 815(a). 160 Vt. at 589. This leads us back to the test applied in Taft Corners: an intermediate ruling by an administrative agency is appealable "if review of the final decision would not provide an adequate remedy . . . or . . . the nature of the claimed defect in the order is such that the harm is greatly aggravated by delay." Taft Corners, 160 Vt. at 589 (citations omitted).

Based on the uncontested facts before us, we conclude that this matter is properly before us under the principles outlined in Taft Corners. As discussed below, the District Commission exceeded its jurisdiction when it re-noticed the Mathezes permit application, an action that

---

[6] This statute reads:

A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in any contested case may appeal that decision to the Supreme Court, unless some other court is expressly provided by law. However, a preliminary, procedural, or intermediate agency action or ruling is immediately appealable under those rules if review of the final decision would not provide an adequate remedy, and the filing of the appeal does not itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms.

would effectively require the Mathezes to go through the application process a second time. Declining jurisdiction over this matter now would only serve to delay us from deciding a relatively straightforward matter of law, which would harm all parties by increasing the time and expense of resolving this matter.

## II. Motion for Summary Judgment

In their motion for summary judgment, the Mathezes argue that the District Commission has no authority to re-notice a permit application after a permit has been granted and the appeals period has passed, and that the attempt to re-notice must therefore be vacated.

Ms. Chung and Mr. Solomon respond that the District Commission can re-notice the case; however, they cite no legal authority to support this proposition.[7]

Normally, where a land use permit decision has become final—either by a failure to appeal, or when an appeal is ruled on by a higher court—a party cannot later collaterally attack that final decision through a separate proceeding. Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 142 (1989). This bar against collateral attacks applies to Act 250 permit decisions. Taft Corners, 160 Vt. at 593.

In Taft Corners, the Court held that a final and unappealed Act 250 permit could not be attacked in later proceedings on a related Act 250 permit, because the original permit was "final and . . . not subject to attack in a subsequent application proceeding, whether or not [it was] properly granted in the first instance." 160 Vt. at 593. The Court explained that this was necessary to ensure "the orderly governance of development and . . . reasonable reliance on the process." Id. (citing Levy, 152 Vt. at 143).

There is, however, an exception to this rule: the NRB "may petition the Environmental Division for revocation of" final Act 250 permits on various grounds set out in 10 V.S.A. § 6027(g).

In this case, the District Commission has attempted to void or revoke the June 17, 2016 permit by re-noticing the underlying application. Neither § 6027(g), nor any other legal authority that we are aware of, allows the District Commission to do this.

The parties cite two decisions—In re Conway, 152 Vt. 526 (1989) and In re White, 172 Vt. 335 (2001)—in addressing whether the District Commission may revoke the permit. Because

---

[7] Ms. Chung and Mr. Solomon argue in their statement of questions that the District Commission intended to provide them with personal notice, failed to do so through what was essentially a clerical error, and that the application was properly re-noticed to remedy this error; they also argue that the only reason they did not appeal the original permit was because of the assurances they were given by Ms. Sultan and Attorney Boulbol that they need not do so. We are unable to address these arguments, however, before addressing the threshold jurisdictional questions before us.

5

regulatory and statutory changes made after these decisions make them imperfect analogues, we hesitate to apply these decisions to the case now before us. For example, White states that Conway does not require a permit to be revoked if the permittee omits something on the application. 172 Vt. at 341. Under § 6027(g)(3), however, a permittee's "failure to disclose all relevant and material facts" can be grounds for revocation. The rulings made in White are based on what was then codified at § 6090(c)[8], which was later replaced by § 6027(g) as part of the Permit Reform Act. 2003 Act No. 115, §§ 50, 119(b). That change expanded the grounds for revocation, and added an additional level of review by requiring the NRB to bring a petition for revocation to the Environmental Division, instead of allowing the NRB to revoke permits on its own. 10 V.S.A. § 6027(g). Both cases also rely on Environmental Board Rules which are no longer in effect.[9]

We likewise find the Environmental Board decisions cited by Ms. Chung and Mr. Solomon inapposite. In one of these decisions, the Environmental Board took the unusual step of re-opening an Act 250 permit for evidence after the permit had been issued for a landfill. In re Howard and Louise Leach, No. 6F0316-EB, Mem. of Decision and Order on Motions for Reconsideration, at 1–2 (Vt. Envtl. Bd. Aug. 28, 1986). The Board justified this by noting that new evidence put into question other evidence on which it relied in determining that the landfill would not contaminate local water supplies. Id. at 4–5. Again, we do not see fit to rely on this decision, primarily because of regulatory and statutory changes that have been made since it was issued.

Other decisions cited by Ms. Chung and Mr. Solomon are further distinguishable in that they deal with re-opening evidence after hearings are finished, but before permits are issued. See, e.g., In re Okemo Mountain, Inc., No. 2S0351-30 (2nd Revision)-EB, No. 2S0351-31-EB, No. 2S0351-25R-EB, Mem. of Decision, at 4 (Vt. Envtl. Bd. Oct. 2, 2001); In re Benson, DR No. 432, Mem. of Decision, at 1 (Vt. Envtl. Bd. Feb. 4, 2005).

## Conclusion

We conclude that the District Commission did not have the legal authority to re-notice the Mathezes' Act 250 permit application after having already issued the permit. Because the District Commission acted beyond its authority, we **GRANT** the motion for summary judgment

---

[8] 10 V.S.A. § 6090(c) read as follows: "A permit may be revoked by the board in the event of violation of any conditions attached to any permit or the terms of any application, or violation of any rules of the board."

[9] Nevertheless, there are some factual similarities in these cases that the NRB might look to if it were to consider petitioning this Court to vacate the Mathezes' permit.

and **VACATE** the decision to re-notice the application.  This decision renders all other outstanding motions moot, and concludes the matter before us.

Electronically signed on May 24, 2017 at 01:54 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division