## STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket No. 54-5-17 Vtec

Comtuck, LLC East Tract Act 250
   Jurisdictional Opinion Appeal
   (JO #2-305)

### Decision on Motions

The present appeal is of Jurisdictional Opinion #2-305 ("JO") issued by the District #2 Environmental Commission Coordinator ("District Coordinator") in response to a request submitted by Comtuck, LLC ("Comtuck"). The JO concerns Comtuck's property located in Wilmington, Vermont. Presently before the Court is Comtuck's motion for summary judgment; the Agency of Natural Resources ("ANR") and the Natural Resources Board's ("NRB") have filed a joint motion to dismiss the appeal and a cross motion for summary judgment.

Comtuck is represented by Jon Anderson, Esq. ANR is represented by Catherine Gjessing, Esq. and Elizabeth Lord, Esq. The NRB is represented by Gregory J. Boulbol, Esq.

### Legal Standard

We begin our analysis of the pending pre-trial motions by noting that a trial court may dismiss an action for lack of subject matter jurisdiction, pursuant to V.R.C.P. 12(b)(1). When reviewing such a motion, the court must regard "all uncontroverted factual allegations of the complaint . . . as true and construed in the light most favorable to the nonmoving party." Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245.[1]

With respect to the cross-motions for summary judgement, pursuant to V.R.C.P. 56(a), we will grant summary judgment to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). In determining whether there is any dispute over a

---

[1] We note that ANR and NRB additionally cite V.R.C.P. 12(b)(6) in support of its motion to dismiss. However, their motion addresses whether the relief requested is outside the subject matter jurisdiction of this Court. Therefore, we analyze the motion pursuant to Rule 12(b)(1).

material fact, "we accept as true [all] allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

**Factual Background**

We recite the following facts solely for the purposes of deciding the pending motions for summary judgment.

**Current Development Proposals**

1.    Comtuck owns a parcel of land in Wilmington, Vermont that was once part of a larger tract of land that hosted several components of what was known forty-eight or more years ago as the Haystack Ski Area and the Haystack Golf Club. The tract now owned by Comtuck was a small portion of the overall Haystack projects. The parcel now owned by Comtuck was formerly referred to as Haystack East and is now known as the East Tract ("East Tract").

2.    Comtuck sought the JO currently on appeal from the District Coordinator in an effort to confirm that it may commence its planned development of the East Tract parcel without further state land use ("Act 250") review. Specifically, Comtuck requested that the District Coordinator render the following two determinations in her jurisdictional opinion:

   A. Permit 700002, dated October 6, 1970, remains in effect with respect to the following East Tract development regimes: Quaker Ridge Village, Sunset Hill Village (formerly part of Partridge Run Village), Partridge Run Village, Saddle Ridge Village, Maple Valley Village, and Deer Hill Village. No further Act 250 approvals are required for Comtuck or its assignee to develop and build houses on the lots in these regimes.

   B. Permit 700002 may be amended without presenting evidence under the following Criteria: 1A Headwaters, 1D Floodways (Haystack property) 6 Educational Services, 8 Wildlife, Natural Areas and Historic Sites, 9B & C Agricultural and Forestry Soils, 9D & E Earth resources, 9H Costs of Scattered Development, 9L Rural Growth Areas, 10 Conformance with the Local Plan (Wilmington) and conformance with the Regional Plan.

Corresp. From Attorney Anderson to District Coordinator, dated April 20, 2017, and filed with the Court with Comtuck's Notice of Appeal on May 8, 2017.

3. Comtuck proposes to reconfigure its subdivision of the East Tract parcel by merging several small lots from a previously proposed and permitted development into single lots to create a total of 100 new lots. The original development of the East Tract called for the parcel to be subdivided into 400 individual lots, many of which were to be about one quarter of an acre in size. Comtuck now proposes to reconfigure the lot boundaries and reduce the number of subdivided lots to 100. It plans to then sell off the reconfigured lots in four phases of twenty-five lots each. The individual lot owners would thereafter secure the necessary state and local building permits and develop the individual lots.

4. Comtuck did not provide the District Coordinator with a site map or other details concerning the reconfigured lots, even after the Coordinator requested such information. No such information concerning the current proposed subdivision has been provided to the Court.

5. Comtuck suggests that its proposed four phases of lot sales would occur as follows: Phase 1: Deer Hill Village; Phase 2 Maple Valley; Phase 3 Saddle Ridge; and Phase 4: Partridge Run. We have not been provided with any detail of the individual lots within each Phase or the external boundaries or location of each Phase. We assume that each Phase will include the sale of 25 to-be-identified lots, given Comtuck's general representations.

6. Comtuck also proposes to change the access into the East Tract from an access off of Cold Brook Road to a new, not yet developed or permitted access off of Vermont Route 100, known as Old Ark Road. It appears that this new access will be some distance from the original access and will enter the East Tract from an opposite side of the proposed development. Comtuck does not appear to contest the representations from NRB and ANR that significant new infrastructure construction will need to occur to develop this new access.[2]

7. Comtuck also proposes to change how water will be supplied to the individual homes and how wastewater from each individual home will be treated. A proposal and condition of the original permitted development was that water supply and wastewater treatment would be provided by a municipal entity. In fact, the Cold Brook Fire District was originally contacted some 48 years ago to provide these services to the individual homes and is providing those services to the residences and commercial facilities already developed at other locations in the Haystack

---

[2] We note that Comtuck does seem to dispute the current condition of infrastructure related to the project.

Resort.  However, presumably due to the passage of nearly five decades, the Cold Brook Fire District has notified Comtuck that it does not intend to provide potable water supplies or wastewater treatment to the not-yet-constructed developments on the East Tract.

8. Comtuck has therefore revised the East Tract development plans to propose that water will be supplied by a well sited on each lot and that wastewater would be treated by a wastewater treatment system to be constructed on each individual lot.

**Permitting History**

9. The East Tract had been the subject of prior Act 250 permits over the course of multiple decades, although development of the East Tract has never been the subject of an Act 250 proceeding devoted solely to development of the East Tract.  Rather, development on what is now known as the East Tract has only been the subject of land use review as part of the much larger development of the Haystack Resort and related facilities.  While not specifically referenced by the parties here, it appears that the East Tract is the only portion of what was originally included in the Haystack Resort facilities that has remained essentially undeveloped for the last forty-eight years, except for some infrastructure work.

10. On October 6, 1970, the District Commission issued Land Use Permit #700002 ("the 1970 Permit") to Haystack Corporation, the then owners of a much larger parcel that included the East Tract.  The 1970 Permit described the proposed project on all of the Haystack Resort lands as: "Recreational Development to include 2004 dwelling units and 700 hotel units."  Of the 2,004 dwelling units, "909 are individual private building lots and 1095 are condominium units located in multi-family buildings."  The 1970 Permit also encompassed improvements to the Haystack Ski Resort, its snowmaking and water retention ponds, and development of the Haystack Golf Club.

11. The plans associated with the 1970 Permit show the project has having three distinct areas for development.  One of these areas is Haystack East, now referred to as the East Tract.

12. On July 2, 1985, the District Commission issued Land Use Permit #700002-3, 700033-2, 2W0204-2, and 2W0531-2 as one permit amendment ("the 1985 Permit") concerning the following portions of the Haystack Resort developments:

  a) Increase snowmaking capacity through the construction of Mirror Lake, a weir construction in Cold Brook, snowmaking pipeline and construction of a 16' x

> 20' pumphouse at Mirror Lake, a 32' x 60' pump and compressor building and a 40' x 70' pump, compressor and maintenance building.
>
> b) Replace double chair #1 with a 3100' triple chair lift.
>
> c) Replace the base to summit gondola with a triple chair lift.
>
> d) Construct a 3,000 square foot golf course maintenance building.

1985 District Commission Permit at 1, a copy of which was attached as Exhibit 8 to Comtuck's motion for Summary Judgment.

13. The 1985 Permit gave umbrella status to these permits. There are no references made to or changes authorized by the 1985 Permit to the residential components of the Haystack Resort developments authorized by the 1970 Permit.

14. The 1985 Permit states that:

> [F]or future amendments applicants will not need to present evidence under the following Criteria: 1A Headwaters, 1D Floodways (Haystack property), 6 Educational Services, 8 Wildlife, Natural Areas, and Historic Sites, 9B & C Agricultural and Forestry Soils, 9L Rural Growth Areas, 10 Conformance with the Local Plan (Wilmington) and conformance with the Regional Plan. . . .
>
> All future phases of the project will require an amendment at which time the District Environmental Commission will establish a construction completion date.

15. Prior owners were additionally granted many permits for additional construction on other associated lands.

16. In accordance with these permits, the prior owners of the project began various construction activities on the overall project lands. However, Comtuck has not presented any evidence that it or its predecessors had begun any of the residential developments proposed for the East Tract. While prior owners had long ago completed work on the access road known as East Tract Road, as well as some of the public wastewater treatment piping, Comtuck now proposes to not use that access way or public wastewater systems. Further, due to the lengthy passage of time, these infrastructure projects would require updating and additional work should Comtuck seek to use them in other means.

17. The roadbed for East Tract Road was first constructed forty-five or more years ago, along with drainage swales. Due to the passage of time, vegetation has regrown in the previously-constructed roadway areas. We have not been presented with evidence of any maintenance, or

the intention to proceed with the East Tract development, in the forty or more years that have passed since the initial infrastructure work was completed.

18.    More important to our analysis, the record does not reveal any demonstration of an intention to proceed with the specific subdivisions first envisioned for the East Tract once the initial infrastructure work was completed in the first few years after the 1970 Permit was issued.

19.    The 1985 Permit included the following two limiting conditions:

31. This permit shall expire on December 6, 2006, unless extended by the District Environmental Commission.

32. Notwithstanding, the Permit shall expire on a year from the date of issuance if the permittees have not demonstrated an intention to proceed with the project.

Id. at 5.

## Discussion

ANR and NRB jointly move to dismiss the appeal for lack of subject matter jurisdiction. Both ANR and NRB, jointly, and Comtuck move for summary judgment.  We address these motions in turn.

**I.    Motion to Dismiss**

10 V.S.A. § 6007(c) lays out the specific procedures that are to be followed when requesting an opinion as to the Act 250 jurisdiction over a proposed or established development. That statutory authorization provides that:

> With respect to the partition or division of land, or with respect to an activity which might or might not constitute development, any person may submit to the district coordinator an "Act 250 Disclosure Statement" and other information required by the rules of the Board, and may request a jurisdictional opinion from the district coordinator concerning the applicability of this chapter.

10 V.S.A. § 6007(c).

Act 250 Rule 3 sets forth additional guidelines for seeking a jurisdictional opinion.  The Rule states:

> Any person seeking a ruling as to whether an activity constitutes a development, subdivision, material change to a permitted project, substantial change to a preexisting project, or is a downtown development subject to 10 V.S.A. Ch. 151 (Act 250), may request a jurisdictional opinion from a district coordinator or an assistant district coordinator (Coordinator) in the environmental district where the potential projected is located pursuant to the provisions of 10 V.S.A. § 6007(c).

6

Act 250, Rule 3(A).

Comtuck's request to the District Coordinator addressed two issues: (1) whether the 1970 Permit remains effective for the East Tract, and whether Comtuck would be required to seek further Act 250 approvals and; (2) whether the 1970 Permit may be amended without providing evidence on Criteria 1A Headwaters, 1D Floodways (Haystack property), 6 Education Services, 8 Wildlife, Natural Areas and Historic Sites, 9B & C Agricultural and Forestry Soils, 9D & E Earth Resources, 9H Costs of Scattered Development, 9L Rural Growth Areas, 10 Conformance with the Local Plan (Wilmington) and conformance with the Regional Plan.

ANR and NRB assert that, because Comtuck has not fully articulated the project it now seeks to develop at the East Tract and, in particular, has not detailed how the new proposed project differs from the proposed project that was permitted 48 years ago, Comtuck's request is an impermissible request for a declaratory ruling. For the reasons more fully detailed below, we disagree with that legal assessment.

This Court has previously noted that "[a] request for a jurisdictional opinion is a unique procedure, since it in effect is a statutory authorization for a district coordinator, and this Court on appeal, to render an advisory opinion as to whether a proposed development requires a state land use permit." In re WhistlePig, LLC Act 250 JO, No. 21-2-13 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Apr. 11, 2014) (Durkin, J.) (citation omitted). Further, in WhistlePig, we noted that the developer "may not have any current plans for construction [at the subject property, but] we know of no statutory restriction on its ability to seek a jurisdictional opinion regarding the scope of Act 250 jurisdiction over its future activities." WhistlePig, LLC, No. 21-2-13 Vtec, slip op. at 6 (Sept. 2, 2015).

Such is the request before the Court. Comtuck has not set forth specific or fully articulated plans to develop the East Tract. It has, however, requested an opinion from the District Coordinator, and this Court on appeal, regarding the scope of Act 250 jurisdiction over future activities on the East Tract.

It is uncontested that Comtuck seeks authority for approximately 100 residential homes to be developed on the East Tract at some point in the future. The validity and scope of a

previously-issued permit is therefore an issue that can be considered through a jurisdictional opinion proceeding, pursuant to 10 V.S.A. § 6007(c) and Act 250 Rule 3.

For these reasons, we conclude that Comtuck has presented a jurisdictional opinion request that may be entertained by the District Coordinator, and this Court on appeal, pursuant to the applicable statute and Rule provisions.

Alternatively, ANR and NRB argue that Comtuck's request impermissibly seeks a certificate of compliance, and suggest that such a request is outside the scope of this Court's jurisdiction. We have struggled to understand this second challenge, since Comtuck has not suggested in any of its filings that it is requesting a certificate of compliance. In fact, the record reveals no such request, or allusion to such a request, being put forth on Comtuck's behalf. Nonetheless, since ANR and NRB raise this argument in their legal analysis, we address it below.

Act 250 Rule 27 states that:

> Any person holding a permit may at any time petition the District Commission issuing the permit for a certification of compliance with the terms and conditions that may be imposed by the permit. Under usual circumstances, a person may petition for a certification upon completion of the construction of a development or division of land that completion or division has been in compliance with the permit. Thereafter, if the permit establishes terms and conditions regarding operation and/or maintenance of a development or subdivision, the person holding the permit may from time to time petition the District Commission for certification of compliance.

Act 250, Rule 37.

We note that the Rule states that a certificate of compliance may be sought after a development is constructed or land is divided. Neither have occurred here.

Comtuck readily states that it does not have an Act 250 permit sanctioning all proposed construction and has not begun the proposed residential development on the East Tract. Further, Comtuck has not requested that the District Coordinator, or this Court on appeal, determine whether the East Tract is in compliance with the terms and conditions of any prior permit issued in this series. Instead, Comtuck requests the Court to determine the validity and scope of the 1970 Permit, as amended by the 1985 Permit, as it relates to the East Tract and further, as-yet constructed, development. As such, we conclude the present request for a jurisdictional opinion is not an impermissible request for a certification of compliance.

For the foregoing reasons, we **DENY** the State's motion to dismiss the appeal.  We therefore turn our analysis to the pending cross-motions for summary judgment.

## II.      Motions for Summary Judgment

Comtuck's jurisdictional opinion request contains two aspects.  First, whether additional approvals are required for the East Tract development; and second, if the answer to the first issue is yes, whether additional approval of an amended residential development plan may be sought without providing evidence on certain criteria.

### a.  Whether Comtuck must seek additional approvals for development at the East Tract.

We begin our analysis here by noting that "[a]n umbrella permit is a final decision unless appealed within thirty days of issuance." In re Taft Corners Assocs., Inc., 160 Vt. 583, 593 (1993) (citing 10 V.S.A. § 6089(a)).  As such, the District Coordinator, and this Court on appeal, is without the authority to "reopen" an umbrella permit. Id.  However, a final umbrella permit is only final on the issues resolved therein.

It is uncontested that the 1985 Permit is an umbrella permit. The Environmental Board has previously recognized that the 1985 Permit is final.  In re: Haystack Highlands, LLC, #700002-10D-EB, Memorandum of Decision, slip op. at 6 (Vt. Envtl. Bd. Dec. 20, 2002).[3]  Further, it is uncontested that the 1985 Permit incorporated prior permits issued to the East Tract and other Haystack Resort parcels, including the 1970 Permit.  We note that the 1985 Permit itself did not authorize the construction of residential units.  However, the 1985 Permit incorporated by specific reference the prior permits, including the 1970 Permit, as they pertained to the various aspects of the Haystack Resort development, including the East Tract.  The 1970 Permit allowed for approximately 400 residential homes to be constructed on the East Tract, with associated access roads and off-site water supply and waste water infrastructure.  Therefore, the permits are final and binding as to those specific developments.

---

[3] The parties cite to several decisions from the former Vermont Environmental Board, as do we, since even though some of these decisions are nearly thirty years old, they continue to provide helpful guidance to our analysis and our understanding of the project's history.  It is likely because of their helpful guidance that the Vermont Legislature directed that we afford decisions of the former Environmental Board "the same weight and consideration as prior decisions of the Environmental Division."  10 V.S.A. §8504(m).

While Comtuck's jurisdictional opinion request specifically addresses the finality and validity of the 1985 Permit, its briefs, and associated exhibits, address a more specific issue: whether the finality that flows from the 1970 and 1985 permits govern Comtuck's present revised development plans. Comtuck's present proposal, though somewhat vague, seeks to reconfigure the East Tract subdivision into 100 home sites by combining two or more of the original 400 quarter-acre lots to create one of each of the new lots. Comtuck's updated plans also call for a new access road and on-site water supply and waste water treatment facilities.

In Comtuck's motion for summary judgement, it asserts that because the 1970 and 1985 permits are effective, and have umbrella status, no further approvals are required to provide authorization for its new development plans for the East Tract. However, in its response to the ANR and NRB cross motion, Comtuck concedes that, should it propose a substantial change to the project, it or its successors would be required to seek an amended permit for the development of an individual lot. But we perceive Comtuck's assertions to be more nuanced.

Comtuck does not appear to object to the notion that individual lot owners will be required to secure an amended land use permit, once they disclose their specific development plans for one or more of the reconfigured lots. However, Comtuck appears to assert two substantive restrictions on the future land use review of future development of the East Tract. First, Comtuck asserts that the 1985 Permit excludes any future review under the cited Act 250 criteria (criteria 1(A), 1(D), 6, 8, 9(B) and (C), 9(D) and (E), 9(H), 9(L), and 10). Second, Comtuck appears to assert that the 1970 Permit authorizes a revised and reconfigured subdivision of the East Tract, even with the passage of nearly fifty years, and even though the reconfigured subdivision would be served by an entirely new access road that enters the property from the opposite side of its boundaries and different water supply and treatment facilities.

For the reasons detailed below, we reject both of Comtuck's assertions. In response to Comtuck's two requests posed to the District Coordinator, now before us on appeal, we conclude that (A) Comtuck's proposed subdivision has changed in such a material and significant manner as to constitute a new and different subdivision proposal than was authorized by the 1970 Permit, thereby necessitating a new review under all applicable Act 250 criteria; and (B) any proposed

residential development of the individual East Tract lots will require a full review under all applicable criteria, unencumbered by the restrictions reflected in the 1985 Permit.

An Act 250 permit allows a property owner "to conduct the improvements specifically authorized by the permit, but no more than that." In re Mountainside Properties Land Use Permit Amendment, No. 117-6-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Dec. 13, 2005) (Durkin, J.). When an Act 250 permit has been issued, jurisdiction "runs with the land." In re Estate of Swinington, 169 Vt. 583, 585 (1999) (mem.) (citations omitted). Once Act 250 jurisdiction attaches, the Act 250 Rules require a permit amendment for a material change to an existing development or subdivision. Act 250, Rule 34(A).

A material change is one that results in:

[A]ny cognizable change to a development or subdivision subject to a permit under Act 250 or findings and conclusions under 10 V.S.A. § 6086b, which has a significant impact on any finding, conclusion, term or condition of the project's permit or which may result in a significant adverse impact with respect to any of the criteria specified in 10 V.S.A. § 6086(a)(1) through (a)(10).

Act 250, Rule 2(C)(6).

The determination of whether a change is material involves a two-part inquiry. In re Request of Jurisdictional Opinion re Changes in Physical Structures & Use at Burlington Int'l Airport for F-35A, 2015 VT 41, ¶ 21, 25, 198 Vt. 510 (setting forth the analysis for whether a change is substantial, then noting that the analysis of whether a change is material is similar). First, there must be a cognizable physical change or change in use. Id. at ¶ 25. Here, the Court considers whether the change is a departure from what was contemplated in the development's original permit. Id. If so, the Court moves to the second prong of the analysis, whether the change has "the potential for significant impact under any of the Act 250 criteria." Id.

We first consider whether there has been a physical change or change in use that qualifies as a cognizable change. Because Comtuck's proposal is for the same use as the previous permit, residential development, we focus on physical changes. Comtuck's disclosure about its present proposal is not complete but does reveal that it seeks to develop the East Tract with 100 homes and to place water supply and wastewater facilities on-site as opposed to those previously permitted off-site.

11

This Court's experience has been that not all residential development is created equal, even though Comtuck appears to assert the opposite. The present proposal will require lot reconfiguration and potentially road reconfiguration. The new proposal also seeks to materially change the access road into the East Tract, since access will be over a completely different road that enters the East Tract from the opposite side of the property. The Old Ark Road will need to be substantially improved and the former access road—East Tract Road— will not be used, at least as revealed by what Comtuck has thus far disclosed. The infrastructure improvements to East Tract Road that Comtuck repeatedly referenced when asserting that this development was commenced some 48 years ago do not appear to be a substantive part of the new development proposal, and it is unclear whether this infrastructure is useable in light of a lack of general maintenance and the lengthy passage of time.

Neither the new lot reconfigurations nor the new access was disclosed or contemplated during the original permit proceedings. Most importantly, however, is the siting of on-site water supply and wastewater facilities. The 1970 Permit authorized residential development with off-site water supply and wastewater facilities. Therefore, the permit did not contemplate placing such facilities on site. We conclude that the proposal constitutes a cognizable material change.

We next turn to whether the change has the potential for a significant impact under any Act 250 criteria. The presently proposed project is wholly different than the project originally permitted. Not only is there a marked difference in the amount of lots proposed as well as their configuration, but there is a newly proposed access road, potentially newly-reconfigured roadwork, and, importantly, on-site water supply and wastewater facilities. The original 1970 Permit proceedings could not have analyzed the potential impacts that could flow from 100 individual water wells and onsite septic systems, nor a different access, because the plans presented 48 years ago did not disclose such systems.[4]

---

[4] One folkloric origin of the incentives for the passage of what is now known as Act 250 was the flow of untreated wastewater from individual lots in mountainside developments at Southern Vermont resorts. We are uncertain whether the pre-Act 250 development at the Haystack Resort may have been one of the developments visited by then Governor Dean Davis and then Attorney General James Jeffords.

It is clear that this wholly new development scheme represents a proposal that could have significant new impacts "on any finding, conclusion, term or condition of the project's permit and which may result in an impact with respect to any" Act 250 criteria. Act 250, Rule 2(C)(6).

Therefore, because the new proposal results in a cognizable material change that has the potential for significant impacts under multiple Act 250 criteria, we conclude that the proposal is a material change from that which was originally permitted. Therefore, Comtuck must seek a permit amendment for its proposed subdivision of the East Tract.

**b. What Criteria Comtuck must present evidence regarding.**

The 1985 Permit includes the following language regarding permit amendments:

[F]or future amendments applicants will not need to present evidence under the following Criteria: 1A Headwaters, 1D Floodways (Haystack Property)[,] 6 Educational Services, 8 Wildlife, Natural Areas and Historic Sites, 9B & C Agricultural and Forestry Soils, 9D & E Earth Resources, 9H Costs of Scattered Development, 9L Rural Growth Areas, 10 Conformance with the Local Plan (Wilmington) and conformance with the Regional Plan.

In re: Haystack Grp., Inc., #700002-3, 7000033-2, 2W0204-2, & 2W0531-2, Findings of Fact and Conclusions of Law, at 2 (Vt. Envtl. Bd. Jul. 7, 1985).

Comtuck asserts that, even if it proposes a material change to the East Tract, it would only be required to present evidence on those criteria not excluded by the 1985 Permit. To do otherwise, it asserts, would be to "reopen" an umbrella permit. Taft Corners, 160 Vt. at 593.

ANR and NRB disagree. They argue that, because the present proposal is a material change from the project authorized by the 1970 and 1985 permits, these criteria must be addressed. For the reasons set forth below, we agree with the assessment by ANR and NRB.

The 1985 Permit was addressed in part in 2002 by the Environmental Board. Haystack Highlands, LLC, #700002-10D-EB, slip op. at 4. In that proceeding, a similar question was raised before the Environmental Board: whether this permit term barred the presentation of evidence relating to these enumerated criteria in future permit amendment proceedings.

While the Board did not reach a final conclusion regarding this issue, we find their discussion instructive. The Board noted that the precedent set forth in Taft Corners provided an exception to the general proposition that unappealed umbrella permits "are final and not subject to attack in a subsequent application proceeding . . .." Haystack Highlands, at 5. One exception to this general proposition of finality arises to allow for re-examination of conformance with

applicable Act 250 "criteria if there is a material change to the project approved in the umbrella permit." Id.

This interpretation has support in the Taft Corners decision itself. In Taft Corners, the Vermont Supreme Court stated that the Environmental Board's decision to remand a matter back to the District Commission "was not based on [the Environmental Board Rules] or a finding of a significant change but rather on the conclusions that umbrella permits can be 'reopened' and that 'many of the potential impacts from this project were never considered.'" 160 Vt. at 593. Such a reopening, the Court concluded, was impermissible. Id. The Court left open the possibility, and indeed considered, that review may be conducted should a material or substantial change be proposed to a project subject to an umbrella permit. Id.[5]

For the reasons set forth above, we conclude that the present proposal is a material change from the originally permitted development. In fact, the present proposal is a wholly different project than that originally proposed and permitted. It seeks to significantly reconfigure and increase lot size, change the East Tract's access road, likely reconfigure on-site road systems, and place water supply and wastewater facilities on site.

Such a proposal has the potential to impact many of the Act 250 criteria, including those enumerated in the 1985 Permit. Should such an impact become apparent, the District Commission, and any further reviewing Court on appeal, is permitted to review whether significant impacts are proposed and receive evidence on such impacted criteria. To do so would not "reopen" the 1985 Permit but, instead, review a separate permit amendment, that proposes a material and substantial change from that which was originally permitted in 1970. Therefore, we conclude that the criteria excluded from future review by the 1985 Permit may be addressed when an amendment application proposes a significant impact on one or more of those criteria.

Due to the significant and material changes hinted at in Comtuck's current proposed plans, we conclude that Comtuck must submit an Act 250 subdivision permit amendment

---

[5] The various district commissions no longer employ the procedure of umbrella permits and apparently have not done so since 1993, all in an effort to reduce confusion and provide more clarity to the doctrine of vested rights. See Haystack Highlands, LLC, #700002-10D-EB, slip op. at 5, note 4 (noting that the Master Permit Policy was adopted on May 19, 1999 to replace the former umbrella permit policy).

application, if it wishes to go forward with its proposed plans to reconfigure the subdivision, access, and water and wastewater services to the proposed East Tract development.

## Conclusion

We conclude that the 1970 Permit, and 1985 Permit giving the 1970 Permit umbrella status, is a final and binding permit that governs the specific development proposals disclosed in those permit application proceedings. However, Comtuck has proposed a material change to the permitted subdivision, such that further approvals are required to subdivide and develop the East Tract as now proposed. Further, because a material change is proposed, Comtuck is required to present evidence on all Act 250 criteria, including those enumerated in the 1985 Permit. For these reasons, we uphold the Jurisdictional Opinion as issued by the District Coordinator.

For the reasons set forth above, we **DENY** the State's motion to dismiss the appeal. We further **DENY** Comtuck's motion for summary judgment and **GRANT** the State's cross-motion.

We note that Comtuck, the initial appellant in this matter, filed a single-Question Statement of Questions, asking the Court to grant the jurisdictional opinion it first requested of the District Coordinator in its letter of April 20, 2017. See pages 2–3, above. We have responded to Comtuck's single Question in the negative and therefore conclude that our Decision here resolves all issues presented by Appellant Comtuck.

A cross-appeal was filed by neighbor Daniel J. Kilmurray on May 24, 2017. However, on July 10, 2017, the Court granted Mr. Kilmurray's request to dismiss his cross-appeal. We therefore conclude that we have addressed all legal issues remaining for our consideration in this appeal.

This concludes the current proceedings on this appeal now before the Court. A Judgment Order accompanies this Decision.

Electronically signed on November 02, 2018 at Brattleboro, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

15